1 | Anthony J. Dain (SBN 098947)
John L. Roberts (SBN 208927)
2 | PROCOPIO, CORY, HARGREAVES &
SAVITCH LLP
3 | 530 B Street, Suite 2100
4 | San Diego, California 92101
Telephone: 619.238.1900
5 | Facsimile: 619.235.0398
6 | E-mail: ajd@procopo.com
          jlr@procopio.com
7
8 | Attorneys for Plaintiff
ADDVENTURE PRODUCTS, INC.

FILED

07 OCT 18 PM 4: 12

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

9

10 | UNITED STATES DISTRICT COURT

11 | FOR THE SOUTHERN DISTRICT OF CALIFORNIA

12 | SAN DIEGO DIVISION

13 | ADDVENTURE PRODUCTS, INC., a California
corporation,
14
15 |           Plaintiff,
16 | v.
17 | ROBERT WEINBERG, an individual, WHITSON
WELLS PMG, LLC, a Texas Limited Liability
18 | Company, and DOES 1-10, collectively d/b/a
19 | "Purple G,"
20 |           Defendants.
21

Case No.:

'07 CV 2 0 2 4    JAH BLM

**COMPLAINT FOR PATENT
INFRINGEMENT IN VIOLATION OF
35 U.S.C. § 271**

**JURY TRIAL DEMANDED**

### Parties

22 | 1.    Plaintiff AddVenture Products, Inc. ("Plaintiff" or "AddVenture") is a corporation
23 | organized under the laws of the State of California, and has a principal place of business at 9895
24 | Olson Drive, Suite A, San Diego, California 92121.
25 | 2.    Plaintiff is in the business of producing and selling t-shirts compressed into a
26 | variety of shapes for use as promotional items.
27 | 3.    Plaintiff advertises its compressed t-shirts on the Internet at
28 | http://www.compresst.com/.

113879.000003/676634.01                    1 of 67

1       4.    Plaintiff is informed and believes and based thereon alleges that Defendant

2   ROBERT WEINBERG ("Defendant Weinberg") is an individual with a residence at 4429 Druid

3   Lane, Dallas, Texas 75205-1031, and does business at 3116 Commerce Street, Suite B, Dallas,

4   Texas 75226-1561 under various unregistered fictitious names, including "PURPLE GIRAFFE

5   COMPRESSED TEES," "PURPLE GIRAFFE APPAREL," "PURPLE G," and online at

6   http://www.purpleg.com/.

7       5.    Plaintiff is informed and believes and based thereon alleges that Defendant

8   WHITSON WELLS PMG, LLC ("Defendant Whitson Wells") is a limited liability company

9   closely held and owned at least in part by Defendant Weinberg, organized and existing under the

10   laws of the State of Texas, having a principal place of business at 5019 McKinney Avenue, Suite

11   100, Dallas, Texas 75205, and does business at 3116 Commerce Street, Suite B, Dallas, Texas

12   75226-1561 under the assumed name "PURPLE GIRAFFE APPAREL SINCE 1983," as well as

13   under various unregistered fictitious names, including "PURPLE GIRAFFE COMPRESSED

14   TEES," "PURPLE GIRAFFE APPAREL," "PURPLE G," and online at

15   http://www.purpleg.com/.

16       6.    Plaintiff is informed and believes and based thereon alleges that Defendant DOES

17   1-10 also do business at 3116 Commerce Street, Suite B, Dallas, Texas 75226-1561 and

18   elsewhere under various unregistered fictitious names, including "PURPLE GIRAFFE

19   COMPRESSED TEES," "PURPLE GIRAFFE APPAREL," "PURPLE G," and online at

20   http://www.purpleg.com/.

21       7.    All the foregoing Defendants are hereafter collectively referred to as "Defendants"

22   or "Purple G."

23       8.    Plaintiff is informed and believes and based thereon alleges that Defendants are

24   competitors of Plaintiff, and also in the business of producing and selling t-shirts compressed into

25   a variety of shapes for use as promotional items.

26       9.    Plaintiff is informed and believes and based thereon alleges that Defendants

27   advertise their competing compressed t-shirts on the Internet at http://www.purpleg.com/.

28   ///

**Complaint for Patent Infringement**

1        **Jurisdiction and Venue**

2        10.    This lawsuit arises under the laws of the United States of America concerning

3    patents, 35 U.S.C. §§ 101 et seq.  Accordingly, this Court has subject matter jurisdiction under 28

4    U.S.C. § 1338(a).

5        11.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b), because a

6    substantial part of the events giving rise to the claims occurred in this judicial district, the

7    intellectual property that is the subject of this action is owned and located within this judicial

8    district, and as to Defendant Whitson Wells, it "resides" in this judicial district as that term is

9    defined in 28 U.S.C.  § 1391(c), because it is subject to personal jurisdiction in this judicial

10    district, rendering venue proper under 28 U.S.C. § 1400(b) as well as 28 U.S.C. § 1391(b).

11        12.    Defendants are subject to personal jurisdiction in this judicial district because,

12    among other reasons: (1) Defendants have purposefully availed themselves of the benefits and

13    protections of this forum; (2) the claims arise, at least in part, directly out of the Defendants'

14    contacts with this forum; and (3) the exercise of jurisdiction is not unreasonable.

15        13.    Defendants have purposefully availed themselves of the benefits and protections

16    of this forum by allowing or promoting the transaction of business within this state, and by

17    intentionally committing acts that are infringing, expressly aiming those acts at this state, and

18    causing harm that on information and belief Defendants know is likely to be suffered in this state.

19    For instance, on information and belief Defendants are knowingly infringing Plaintiff's patents,

20    and Defendants know Plaintiff to be a resident of this state.

21        14.    The present claims arise, at least in part, directly out of the Defendants' contacts

22    with this forum, in that Defendants have offered for sale and/or sold infringing products in this

23    forum, and on information and belief have knowingly provided infringing products to persons in

24    this forum.

25        15.    The exercise of jurisdiction over Defendants is not unreasonable, because, among

26    other reasons, on information and belief Defendants were put on notice that they were infringing

27    Plaintiff's patents and that Plaintiff is a resident of this state, yet Defendants continue to infringe

28    unabated.  Accordingly, Defendants should reasonably expect to face suit in this judicial district.

---

**Complaint for Patent Infringement**

113879.000003/676634.01

1    Further, on information and belief key evidence and nonparty witnesses are located within this

2    judicial district, and only courts in California can produce California witnesses, live at trial.

3    Finally, this state has a strong interest in providing a forum for its residents who are tortiously

4    injured, and this forum can provide Plaintiff with convenient, efficient and effective relief.

5    <center>**FIRST CLAIM**</center>

6    <center>**(Infringement of U.S. Patent No. 5,042,227)**</center>

7        16.    On August 27, 1991 United States Letters Patent No. 5,042,227 entitled "Method

8    & Apparatus for Compression Packaging," (hereinafter "the Compression Patent") issued to

9    inventor Wayne M. Merry.

10        17.    Plaintiff AddVenture Products, Inc. is the current assignee of the Compression

11   Patent, including the right to sue for past infringements.

12        18.    A true and correct copy of the Compression Patent is attached hereto as Exhibit 1.

13        19.    Plaintiff is informed and believes and based thereon alleges that Defendants have

14   been, and are currently, infringing the Compression Patent in violation of 35 U.S.C. § 271 under

15   the doctrine of equivalents and/or by direct infringement, by making, using, offering for sale and

16   selling t-shirts compressed by a method embodying the patented invention, and/or inducing

17   others to do the same.

18        20.    Plaintiff is informed and believes and based thereon alleges that Defendants are

19   fully aware of Plaintiff's patents, are knowingly infringing them, and that Defendants' acts of

20   infringement will continue after service of this complaint.  For all these reasons Defendants'

21   infringement is willful and deliberate, rendering this case appropriate for treble damages under 35

22   U.S.C. § 284, and making this an exceptional case under 35 U.S.C. § 285.

23        21.    As a result of Defendants' infringement, Plaintiff has suffered, and will continue

24   to suffer, damages in the form of, among other things, lost profits, and is entitled to recover at a

25   minimum a reasonable royalty.  Unless Defendants are enjoined by this Court from continuing

26   their infringement of the Compression Patent, Plaintiff will suffer additional irreparable damages

27   and impairment of the value of its patent rights.  Thus, an injunction against further infringement

28   is appropriate.

---

<center>**Complaint for Patent Infringement**</center>

113879.000003/676634.01

## SECOND CLAIM

### (Infringement of U.S. Design Patent No. D431,184)

22.    Plaintiff hereby incorporates by this reference each of the foregoing paragraphs as though set forth in their entirety herein.

23.    U.S. Design Patent No. D431,184 was duly and lawfully issued on September 26, 2000 (the "Wine Bottle Patent"). A true and correct copy of this patent is attached hereto as Exhibit 2.

24.    Plaintiff is the owner of the Wine Bottle Patent, and has standing to sue for infringement of the Wine Bottle Patent.

25.    Defendants have been, and on information and belief are currently, infringing the Wine Bottle Patent in violation of 35 U.S.C. § 271.

26.    Defendants' acts of infringement include the unauthorized making, using, selling, and/or offering for sale of wine bottle-shaped compressed t-shirts covered, either directly or under the doctrine of equivalents, by the claim of the Wine Bottle Patent, and/or inducing others to do the same.

27.    On information and belief, Defendants' acts of infringement have been made with actual notice of the Wine Bottle Patent. On information and belief, Defendants' acts of infringement will continue unless stopped by this Court. On information and belief, Defendants' continued infringement is willful and deliberate, rendering this case appropriate for treble damages under 35 U.S.C. § 284, additional damages to the extent of Defendants' total profit under 35 U.S.C. § 289, and making this an exceptional case under 35 U.S.C. § 285.

28.    As a result of Defendants' infringement, Plaintiff has, and will suffer, damages in the form of lost profits, or at a minimum, be entitled to recover a reasonable royalty. Unless Defendants are enjoined by this Court from continuing their infringement of the Wine Bottle Patent, Plaintiff has, and will suffer, additional irreparable damages and impairment of the value of its patent rights. Thus, an injunction against further infringement is appropriate.

### THIRD CLAIM

### (Infringement of U.S. Design Patent No. D431,186)

29.    Plaintiff hereby incorporates by this reference each of the foregoing paragraphs as though set forth in their entirety herein.

30.    U.S. Design Patent No. D431,186 was duly and lawfully issued on September 26, 2000 (the "Light Bulb Patent").  A true and correct copy of this patent is attached hereto as Exhibit 3.

31.    Plaintiff is the owner of the Light Bulb Patent, and has standing to sue for infringement of the Light Bulb Patent.

32.    Defendants have been, and on information and belief are currently, infringing the Light Bulb Patent in violation of 35 U.S.C. § 271.

33.    Defendants' acts of infringement include the unauthorized making, using, selling, and/or offering for sale of light bulb-shaped compressed t-shirts covered, either directly or under the doctrine of equivalents, by the claim of the Light Bulb Patent, and/or inducing others to do the same.

34.    On information and belief, Defendants' acts of infringement have been made with actual notice of the Light Bulb Patent.  On information and belief, Defendants' acts of infringement will continue unless stopped by this Court.  On information and belief, Defendants' continued infringement is willful and deliberate, rendering this case appropriate for treble damages under 35 U.S.C. § 284, additional damages to the extent of Defendants' total profit under 35 U.S.C. § 289, and making this an exceptional case under 35 U.S.C. § 285.

35.    As a result of Defendants' infringement, Plaintiff has, and will suffer, damages in the form of lost profits, or at a minimum, be entitled to recover a reasonable royalty.  Unless Defendants are enjoined by this Court from continuing their infringement of the Light Bulb Patent, Plaintiff has, and will suffer, additional irreparable damages and impairment of the value of its patent rights.  Thus, an injunction against further infringement is appropriate.

---

**Complaint for Patent Infringement**

113879.000003/676634.01

1

## FOURTH CLAIM

2

### (Infringement of U.S. Design Patent No. D431,456)

3      36.    Plaintiff hereby incorporates by this reference each of the foregoing paragraphs as

4   though set forth in their entirety herein.

5      37.    U.S. Design Patent No. D431,456 was duly and lawfully issued on October 3,

6   2000 (the "House Patent").  A true and correct copy of this patent is attached hereto as Exhibit 4.

7      38.    Plaintiff is the owner of the House Patent, and has standing to sue for infringement

8   of the House Patent.

9      39.    Defendants have been, and on information and belief are currently, infringing the

10   House Patent in violation of 35 U.S.C. § 271.

11      40.    Defendants' acts of infringement include the unauthorized making, using, selling,

12   and/or offering for sale of house-shaped compressed t-shirts covered, either directly or under the

13   doctrine of equivalents, by the claim of the House Patent, and/or inducing others to do the same.

14      41.    On information and belief, Defendants' acts of infringement have been made with

15   actual notice of the House Patent.  On information and belief, Defendants' acts of infringement

16   will continue unless stopped by this Court.  On information and belief, Defendants' continued

17   infringement is willful and deliberate, rendering this case appropriate for treble damages under 35

18   U.S.C. § 284, additional damages to the extent of Defendants' total profit under 35 U.S.C. § 289,

19   and making this an exceptional case under 35 U.S.C. § 285.

20      42.    As a result of Defendants' infringement, Plaintiff has, and will suffer, damages in

21   the form of lost profits, or at a minimum, be entitled to recover a reasonable royalty.  Unless

22   Defendants are enjoined by this Court from continuing their infringement of the House Patent,

23   Plaintiff has, and will suffer, additional irreparable damages and impairment of the value of its

24   patent rights.  Thus, an injunction against further infringement is appropriate.

25

## FIFTH CLAIM

26

### (Infringement of U.S. Design Patent No. D439,151)

27      43.    Plaintiff hereby incorporates by this reference each of the foregoing paragraphs as

28   though set forth in their entirety herein.

---

**Complaint for Patent Infringement**

113879.000003/676634.01

44.    U.S. Design Patent No. D439,151 was duly and lawfully issued on March 20, 2001 (the "Tractor/Semitrailer Patent"). A true and correct copy of this patent is attached hereto as Exhibit 5.

45.    Plaintiff is the owner of the Tractor/Semitrailer Patent, and has standing to sue for infringement of the Tractor/Semitrailer Patent.

46.    Defendants have been, and on information and belief are currently, infringing the Tractor/Semitrailer Patent in violation of 35 U.S.C. § 271.

47.    Defendants' acts of infringement include the unauthorized making, using, selling, and/or offering for sale of tractor/semitrailer-shaped compressed t-shirts covered, either directly or under the doctrine of equivalents, by the claim of the Tractor/Semitrailer Patent, and/or inducing others to do the same.

48.    On information and belief, Defendants' acts of infringement have been made with actual notice of the Tractor/Semitrailer Patent. On information and belief, Defendants' acts of infringement will continue unless stopped by this Court. On information and belief, Defendants' continued infringement is willful and deliberate, rendering this case appropriate for treble damages under 35 U.S.C. § 284, additional damages to the extent of Defendants' total profit under 35 U.S.C. § 289, and making this an exceptional case under 35 U.S.C. § 285.

49.    As a result of Defendants' infringement, Plaintiff has, and will suffer, damages in the form of lost profits, or at a minimum, be entitled to recover a reasonable royalty. Unless Defendants are enjoined by this Court from continuing their infringement of the Tractor/Semitrailer Patent, Plaintiff has, and will suffer, additional irreparable damages and impairment of the value of its patent rights. Thus, an injunction against further infringement is appropriate.

## SIXTH CLAIM

### (Infringement of U.S. Design Patent No. D439,153)

50.    Plaintiff hereby incorporates by this reference each of the foregoing paragraphs as though set forth in their entirety herein.

51.    U.S. Design Patent No. D439,153 was duly and lawfully issued on March 20,

---

**Complaint for Patent Infringement**

2001 (the "Fish Patent"). A true and correct copy of this patent is attached hereto as Exhibit 6.

52.      Plaintiff is the owner of the Fish Patent, and has standing to sue for infringement of the Fish Patent.

53.      Defendants have been, and on information and belief are currently, infringing the Fish Patent in violation of 35 U.S.C. § 271.

54.      Defendants' acts of infringement include the unauthorized making, using, selling, and/or offering for sale of fish-shaped compressed t-shirts covered, either directly or under the doctrine of equivalents, by the claim of the Fish Patent, and/or inducing others to do the same.

55.      On information and belief, Defendants' acts of infringement have been made with actual notice of the Fish Patent. On information and belief, Defendants' acts of infringement will continue unless stopped by this Court.  On information and belief, Defendants' continued infringement is willful and deliberate, rendering this case appropriate for treble damages under 35 U.S.C. § 284, additional damages to the extent of Defendants' total profit under 35 U.S.C. § 289, and making this an exceptional case under 35 U.S.C. § 285.

56.      As a result of Defendants' infringement, Plaintiff has, and will suffer, damages in the form of lost profits, or at a minimum, be entitled to recover a reasonable royalty.  Unless Defendants are enjoined by this Court from continuing their infringement of the Fish Patent, Plaintiff has, and will suffer, additional irreparable damages and impairment of the value of its patent rights. Thus, an injunction against further infringement is appropriate.

## SEVENTH CLAIM

### (Infringement of U.S. Design Patent No. D441,282)

57.      Plaintiff hereby incorporates by this reference each of the foregoing paragraphs as though set forth in their entirety herein.

58.      U.S. Design Patent No. D441,282 was duly and lawfully issued on May 1, 2001 (the "Numeral One Patent"). A true and correct copy of this patent is attached hereto as Exhibit 7.

59.      Plaintiff is the owner of the Numeral One Patent, and has standing to sue for infringement of the Numeral One Patent.

---

**Complaint for Patent Infringement**

60.     Defendants have been, and on information and belief are currently, infringing the Numeral One Patent in violation of 35 U.S.C. § 271.

61.     Defendants' acts of infringement include the unauthorized making, using, selling, and/or offering for sale of numeral one-shaped compressed t-shirts covered, either directly or under the doctrine of equivalents, by the claim of the Numeral One Patent, and/or inducing others to do the same.

62.     On information and belief, Defendants' acts of infringement have been made with actual notice of the Numeral One Patent.  On information and belief, Defendants' acts of infringement will continue unless stopped by this Court.  On information and belief, Defendants' continued infringement is willful and deliberate, rendering this case appropriate for treble damages under 35 U.S.C. § 284, additional damages to the extent of Defendants' total profit under 35 U.S.C. § 289, and making this an exceptional case under 35 U.S.C. § 285.

63.     As a result of Defendants' infringement, Plaintiff has, and will suffer, damages in the form of lost profits, or at a minimum, be entitled to recover a reasonable royalty.  Unless Defendants are enjoined by this Court from continuing their infringement of the Numeral One Patent, Plaintiff has, and will suffer, additional irreparable damages and impairment of the value of its patent rights.  Thus, an injunction against further infringement is appropriate.

## EIGHTH CLAIM

### (Infringement of U.S. Design Patent No. D445,671)

64.     Plaintiff hereby incorporates by this reference each of the foregoing paragraphs as though set forth in their entirety herein.

65.     U.S. Design Patent No. D445,671 was duly and lawfully issued on July 31, 2001 (the "Beer Bottle Patent").  A true and correct copy of this patent is attached hereto as Exhibit 8.

66.     Plaintiff is the owner of the Beer Bottle Patent, and has standing to sue for infringement of the Beer Bottle Patent.

67.     Defendants have been, and on information and belief are currently, infringing the Beer Bottle Patent in violation of 35 U.S.C. § 271.

68.     Defendants' acts of infringement include the unauthorized making, using, selling,

---

**Complaint for Patent Infringement**

113879.000003/676634.01

1  and/or offering for sale of beer bottle-shaped compressed t-shirts covered, either directly or under

2  the doctrine of equivalents, by the claim of the Beer Bottle Patent, and/or inducing others to do

3  the same.

4        69.    On information and belief, Defendants' acts of infringement have been made with

5  actual notice of the Beer Bottle Patent.   On information and belief, Defendants' acts of

6  infringement will continue unless stopped by this Court.  On information and belief, Defendants'

7  continued infringement is willful and deliberate, rendering this case appropriate for treble

8  damages under 35 U.S.C. § 284, additional damages to the extent of Defendants' total profit

9  under 35 U.S.C. § 289, and making this an exceptional case under 35 U.S.C. § 285.

10        70.    As a result of Defendants' infringement, Plaintiff has, and will suffer, damages in

11  the form of lost profits, or at a minimum, be entitled to recover a reasonable royalty.   Unless

12  Defendants are enjoined by this Court from continuing their infringement of the Beer Bottle

13  Patent, Plaintiff has, and will suffer, additional irreparable damages and impairment of the value

14  of its patent rights.  Thus, an injunction against further infringement is appropriate.

**NINTH CLAIM**

**(Infringement of U.S. Design Patent No. D451,009)**

17        71.    Plaintiff hereby incorporates by this reference each of the foregoing paragraphs as

18  though set forth in their entirety herein.

19        72.    U.S. Design Patent No. D451,009 was duly and lawfully issued on November 27,

20  2001 (the "Capsule Patent").  A true and correct copy of this patent is attached hereto as Exhibit

21  9.

22        73.    Plaintiff is the owner of the Capsule Patent, and has standing to sue for

23  infringement of the Capsule Patent.

24        74.    Defendants have been, and on information and belief are currently, infringing the

25  Capsule Patent in violation of 35 U.S.C. § 271.

26        75.    Defendants' acts of infringement include the unauthorized making, using, selling,

27  and/or offering for sale of capsule-shaped compressed t-shirts covered, either directly or under

28  the doctrine of equivalents, by the claim of the Capsule Patent, and/or inducing others to do the

**Complaint for Patent Infringement**

113879.000003/676634.01

1    same.

2         76.    On information and belief, Defendants' acts of infringement have been made with

3    actual notice of the Capsule Patent.  On information and belief, Defendants' acts of infringement

4    will continue unless stopped by this Court.  On information and belief, Defendants' continued

5    infringement is willful and deliberate, rendering this case appropriate for treble damages under 35

6    U.S.C. § 284, additional damages to the extent of Defendants' total profit under 35 U.S.C. § 289,

7    and making this an exceptional case under 35 U.S.C. § 285.

8         77.    As a result of Defendants' infringement, Plaintiff has, and will suffer, damages in

9    the form of lost profits, or at a minimum, be entitled to recover a reasonable royalty.  Unless

10   Defendants are enjoined by this Court from continuing their infringement of the Capsule Patent,

11   Plaintiff has, and will suffer, additional irreparable damages and impairment of the value of its

12   patent rights.  Thus, an injunction against further infringement is appropriate.

13                                    **TENTH CLAIM**

14                  **(Infringement of U.S. Design Patent No. D452,649)**

15        78.    Plaintiff hereby incorporates by this reference each of the foregoing paragraphs as

16   though set forth in their entirety herein.

17        79.    U.S. Design Patent No. D452,649 was duly and lawfully issued on January 1,

18   2002 (the "Helmet Patent").  A true and correct copy of this patent is attached hereto as Exhibit

19   10.

20        80.    Plaintiff is the owner of the Helmet Patent, and has standing to sue for

21   infringement of the Helmet Patent.

22        81.    Defendants have been, and on information and belief are currently, infringing the

23   Helmet Patent in violation of 35 U.S.C. § 271.

24        82.    Defendants' acts of infringement include the unauthorized making, using, selling,

25   and/or offering for sale of helmet-shaped compressed t-shirts covered, either directly or under the

26   doctrine of equivalents, by the claim of the Helmet Patent, and/or inducing others to do the same.

27        83.    On information and belief, Defendants' acts of infringement have been made with

28   actual notice of the Helmet Patent.  On information and belief, Defendants' acts of infringement

---

**Complaint for Patent Infringement**

113879.000003/676634.01

1    will continue unless stopped by this Court. On information and belief, Defendants' continued

2    infringement is willful and deliberate, rendering this case appropriate for treble damages under 35

3    U.S.C. § 284, additional damages to the extent of Defendants' total profit under 35 U.S.C. § 289,

4    and making this an exceptional case under 35 U.S.C. § 285.

5        84.    As a result of Defendants' infringement, Plaintiff has, and will suffer, damages in

6    the form of lost profits, or at a minimum, be entitled to recover a reasonable royalty. Unless

7    Defendants are enjoined by this Court from continuing their infringement of the Helmet Patent,

8    Plaintiff has, and will suffer, additional irreparable damages and impairment of the value of its

9    patent rights. Thus, an injunction against further infringement is appropriate.

10                                   **ELEVENTH CLAIM**

11             **(Infringement of U.S. Design Patent No. D454,297)**

12        85.    Plaintiff hereby incorporates by this reference each of the foregoing paragraphs as

13    though set forth in their entirety herein.

14        86.    U.S. Design Patent No. D454,297 was duly and lawfully issued on March 12,

15    2002 (the "Tractor-Trailer Patent"). A true and correct copy of this patent is attached hereto as

16    Exhibit 11.

17        87.    Plaintiff is the owner of the Tractor-Trailer Patent, and has standing to sue for

18    infringement of the Tractor-Trailer Patent.

19        88.    Defendants have been, and on information and belief are currently, infringing the

20    Tractor-Trailer Patent in violation of 35 U.S.C. § 271.

21        89.    Defendants' acts of infringement include the unauthorized making, using, selling,

22    and/or offering for sale of tractor-trailer-shaped compressed t-shirts covered, either directly or

23    under the doctrine of equivalents, by the claim of the Tractor-Trailer Patent, and/or inducing

24    others to do the same.

25        90.    On information and belief, Defendants' acts of infringement have been made with

26    actual notice of the Tractor-Trailer Patent. On information and belief, Defendants' acts of

27    infringement will continue unless stopped by this Court. On information and belief, Defendants'

28    continued infringement is willful and deliberate, rendering this case appropriate for treble

---

**Complaint for Patent Infringement**

113879.000003/676634.01

1    damages under 35 U.S.C. § 284, additional damages to the extent of Defendants' total profit

2    under 35 U.S.C. § 289, and making this an exceptional case under 35 U.S.C. § 285.

3        91.    As a result of Defendants' infringement, Plaintiff has, and will suffer, damages in

4    the form of lost profits, or at a minimum, be entitled to recover a reasonable royalty.  Unless

5    Defendants are enjoined by this Court from continuing their infringement of the Tractor-Trailer

6    Patent, Plaintiff has, and will suffer, additional irreparable damages and impairment of the value

7    of its patent rights.  Thus, an injunction against further infringement is appropriate.

8    <div align="center">**TWELFTH CLAIM**</div>

9    <div align="center">**(Infringement of U.S. Design Patent No. D455,341)**</div>

10        92.    Plaintiff hereby incorporates by this reference each of the foregoing paragraphs as

11    though set forth in their entirety herein.

12        93.    U.S. Design Patent No. D455,341 was duly and lawfully issued on April 9, 2002

13    (the "Shoe Patent").  A true and correct copy of this patent is attached hereto as Exhibit 12.

14        94.    Plaintiff is the owner of the Shoe Patent, and has standing to sue for infringement

15    of the Shoe Patent.

16        95.    Defendants have been, and on information and belief are currently, infringing the

17    Shoe Patent in violation of 35 U.S.C. § 271.

18        96.    Defendants' acts of infringement include the unauthorized making, using, selling,

19    and/or offering for sale of shoe-shaped compressed t-shirts covered, either directly or under the

20    doctrine of equivalents, by the claim of the Shoe Patent, and/or inducing others to do the same.

21        97.    On information and belief, Defendants' acts of infringement have been made with

22    actual notice of the Shoe Patent.  On information and belief, Defendants' acts of infringement

23    will continue unless stopped by this Court.  On information and belief, Defendants' continued

24    infringement is willful and deliberate, rendering this case appropriate for treble damages under 35

25    U.S.C. § 284, additional damages to the extent of Defendants' total profit under 35 U.S.C. § 289,

26    and making this an exceptional case under 35 U.S.C. § 285.

27        98.    As a result of Defendants' infringement, Plaintiff has, and will suffer, damages in

28    the form of lost profits, or at a minimum, be entitled to recover a reasonable royalty.  Unless

1    Defendants are enjoined by this Court from continuing their infringement of the Shoe Patent,

2    Plaintiff has, and will suffer, additional irreparable damages and impairment of the value of its

3    patent rights. Thus, an injunction against further infringement is appropriate.

**PRAYER FOR RELIEF**

5    WHEREFORE, Plaintiff AddVenture Products, Inc. prays for judgment as follows:

6    **AS TO THE FIRST CLAIM**:

7    A.    That judgment be entered that Defendants are willfully infringing AddVenture's

8    Compression Patent, United States Letters Patent No. 5,042,227;

9    B.    That Defendants, their agents, servants, employees, successors and assignors, and

10   all those acting under the authority of, or in privity or concert with them, and each of them, be

11   permanently enjoined from directly or indirectly infringing the Compression Patent;

12   C.    That judgment be entered for damages, together with prejudgment interest, to

13   compensate Plaintiff for Defendants' infringement of the Compression Patent;

14   D.    That judgment be entered for treble damages pursuant to 35 U.S.C. § 284;

15   E.    That judgment be entered that this case is an exceptional case within the meaning

16   of 35 U.S.C. § 285, and for an award of reasonable attorney's fees to Plaintiff;

17   F.    That judgment be entered for costs to be awarded to Plaintiff; and

18   G.    For such other and further relief as the Court may deem proper under the

19   circumstances.

20   **AS TO THE SECOND CLAIM:**

21   A.    That judgment be entered that Defendants have willfully infringed AddVenture's

22   Wine Bottle Patent, United States Letters Patent No. Des. 431,184;

23   B.    That Defendants, their agents, servants, employees, successors and assignors, and

24   all those acting under the authority of, or in privity or concert with them, and each of them, be

25   permanently enjoined from directly or indirectly infringing the Wine Bottle Patent;

26   C.    That judgment be entered for damages, together with prejudgment interest, to

27   compensate Plaintiff for Defendants' infringement of the Wine Bottle Patent;

28   D.    That judgment be entered for treble damages pursuant to 35 U.S.C. § 284;

**Complaint for Patent Infringement**

113879.000003/676634.01

1    E.    That judgment be entered for additional damages pursuant to 35 U.S.C. § 289;

2    F.    That judgment be entered that this case is an exceptional case within the meaning

3  of 35 U.S.C. § 285, and for an award of reasonable attorney's fees to Plaintiff;

4    G.    That judgment be entered for costs to be awarded to Plaintiff; and

5    H.    For such other and further relief as the Court may deem proper under the

6  circumstances.

7  **AS TO THE THIRD CLAIM:**

8    A.    That judgment be entered that Defendants have willfully infringed AddVenture's

9  Light Bulb Patent, United States Letters Patent No. Des. 431,186;

10    B.    That Defendants, their agents, servants, employees, successors and assignors, and

11  all those acting under the authority of, or in privity or concert with them, and each of them, be

12  permanently enjoined from directly or indirectly infringing the Light Bulb Patent;

13    C.    That judgment be entered for damages, together with prejudgment interest, to

14  compensate Plaintiff for Defendants' infringement of the Light Bulb Patent;

15    D.    That judgment be entered for treble damages pursuant to 35 U.S.C. § 284;

16    E.    That judgment be entered for additional damages pursuant to 35 U.S.C. § 289;

17    F.    That judgment be entered that this case is an exceptional case within the meaning

18  of 35 U.S.C. § 285, and for an award of reasonable attorney's fees to Plaintiff;

19    G.    That judgment be entered for costs to be awarded to Plaintiff; and

20    H.    For such other and further relief as the Court may deem proper under the

21  circumstances.

22  **AS TO THE FOURTH CLAIM:**

23    A.    That judgment be entered that Defendants have willfully infringed AddVenture's

24  House Patent, United States Letters Patent No. Des. 431,456;

25    B.    That Defendants, their agents, servants, employees, successors and assignors, and

26  all those acting under the authority of, or in privity or concert with them, and each of them, be

27  permanently enjoined from directly or indirectly infringing the House Bottle Patent;

28    C.    That judgment be entered for damages, together with prejudgment interest, to

---

**Complaint for Patent Infringement**

113879.000003/676634.01

1 | compensate Plaintiff for Defendants' infringement of the House Bottle Patent;

2 |     D.    That judgment be entered for treble damages pursuant to 35 U.S.C. § 284;

3 |     E.    That judgment be entered for additional damages pursuant to 35 U.S.C. § 289;

4 |     F.    That judgment be entered that this case is an exceptional case within the meaning

5 | of 35 U.S.C. § 285, and for an award of reasonable attorney's fees to Plaintiff;

6 |     G.    That judgment be entered for costs to be awarded to Plaintiff; and

7 |     H.    For such other and further relief as the Court may deem proper under the

8 | circumstances.

9 | **AS TO THE FIFTH CLAIM**:

10 |     A.    That judgment be entered that Defendants have willfully infringed AddVenture's

11 | Tractor/Semitrailer Patent, United States Letters Patent No. Des. 439,151;

12 |     B.    That Defendants, their agents, servants, employees, successors and assignors, and

13 | all those acting under the authority of, or in privity or concert with them, and each of them, be

14 | permanently enjoined from directly or indirectly infringing the Tractor/Semitrailer Patent;

15 |     C.    That judgment be entered for damages, together with prejudgment interest, to

16 | compensate Plaintiff for Defendants' infringement of the Tractor/Semitrailer Patent;

17 |     D.    That judgment be entered for treble damages pursuant to 35 U.S.C. § 284;

18 |     E.    That judgment be entered for additional damages pursuant to 35 U.S.C. § 289;

19 |     F.    That judgment be entered that this case is an exceptional case within the meaning

20 | of 35 U.S.C. § 285, and for an award of reasonable attorney's fees to Plaintiff;

21 |     G.    That judgment be entered for costs to be awarded to Plaintiff; and

22 |     H.    For such other and further relief as the Court may deem proper under the

23 | circumstances.

24 | **AS TO THE SIXTH CLAIM**:

25 |     A.    That judgment be entered that Defendants have willfully infringed AddVenture's

26 | Fish Patent, United States Letters Patent No. Des. 439,153;

27 |     B.    That Defendants, their agents, servants, employees, successors and assignors, and

28 | all those acting under the authority of, or in privity or concert with them, and each of them, be

---

**Complaint for Patent Infringement**

113879.000003/676634.01

1    permanently enjoined from directly or indirectly infringing the Fish Patent;

2    C.    That judgment be entered for damages, together with prejudgment interest, to

3    compensate Plaintiff for Defendants' infringement of the Fish Patent;

4    D.    That judgment be entered for treble damages pursuant to 35 U.S.C. § 284;

5    E.    That judgment be entered for additional damages pursuant to 35 U.S.C. § 289;

6    F.    That judgment be entered that this case is an exceptional case within the meaning

7    of 35 U.S.C. § 285, and for an award of reasonable attorney's fees to Plaintiff;

8    G.    That judgment be entered for costs to be awarded to Plaintiff; and

9    H.    For such other and further relief as the Court may deem proper under the

10    circumstances.

11    **AS TO THE SEVENTH CLAIM**:

12    A.    That judgment be entered that Defendants have willfully infringed AddVenture's

13    Numeral One Patent, United States Letters Patent No. Des. 441,282;

14    B.    That Defendants, their agents, servants, employees, successors and assignors, and

15    all those acting under the authority of, or in privity or concert with them, and each of them, be

16    permanently enjoined from directly or indirectly infringing the Numeral One Patent;

17    C.    That judgment be entered for damages, together with prejudgment interest, to

18    compensate Plaintiff for Defendants' infringement of the Numeral One Patent;

19    D.    That judgment be entered for treble damages pursuant to 35 U.S.C. § 284;

20    E.    That judgment be entered for additional damages pursuant to 35 U.S.C. § 289;

21    F.    That judgment be entered that this case is an exceptional case within the meaning

22    of 35 U.S.C. § 285, and for an award of reasonable attorney's fees to Plaintiff;

23    G.    That judgment be entered for costs to be awarded to Plaintiff; and

24    H.    For such other and further relief as the Court may deem proper under the

25    circumstances.

26    **AS TO THE EIGHTH CLAIM**:

27    A.    That judgment be entered that Defendants have willfully infringed AddVenture's

28    Beer Bottle Patent, United States Letters Patent No. Des. 445,671;

**Complaint for Patent Infringement**

1       B.      That Defendants, their agents, servants, employees, successors and assignors, and

2    all those acting under the authority of, or in privity or concert with them, and each of them, be

3    permanently enjoined from directly or indirectly infringing the Beer Bottle Patent;

4       C.      That judgment be entered for damages, together with prejudgment interest, to

5    compensate Plaintiff for Defendants' infringement of the Beer Bottle Patent;

6       D.      That judgment be entered for treble damages pursuant to 35 U.S.C. § 284;

7       E.      That judgment be entered for additional damages pursuant to 35 U.S.C. § 289;

8       F.      That judgment be entered that this case is an exceptional case within the meaning

9    of 35 U.S.C. § 285, and for an award of reasonable attorney's fees to Plaintiff;

10      G.      That judgment be entered for costs to be awarded to Plaintiff; and

11      H.      For such other and further relief as the Court may deem proper under the

12   circumstances.

13   **AS TO THE NINTH CLAIM**:

14      A.      That judgment be entered that Defendants have willfully infringed AddVenture's

15   Capsule Patent, United States Letters Patent No. Des. 451,009;

16      B.      That Defendants, their agents, servants, employees, successors and assignors, and

17   all those acting under the authority of, or in privity or concert with them, and each of them, be

18   permanently enjoined from directly or indirectly infringing the Capsule Patent;

19      C.      That judgment be entered for damages, together with prejudgment interest, to

20   compensate Plaintiff for Defendants' infringement of the Capsule Patent;

21      D.      That judgment be entered for treble damages pursuant to 35 U.S.C. § 284;

22      E.      That judgment be entered for additional damages pursuant to 35 U.S.C. § 289;

23      F.      That judgment be entered that this case is an exceptional case within the meaning

24   of 35 U.S.C. § 285, and for an award of reasonable attorney's fees to Plaintiff;

25      G.      That judgment be entered for costs to be awarded to Plaintiff; and

26      H.      For such other and further relief as the Court may deem proper under the

27   circumstances.

28   ///

---

**Complaint for Patent Infringement**

113879.000003/676634.01

1   **AS TO THE TENTH CLAIM**:

2       A.     That judgment be entered that Defendants have willfully infringed AddVenture's

3   Helmet Patent, United States Letters Patent No. Des. 452,649;

4       B.     That Defendants, their agents, servants, employees, successors and assignors, and

5   all those acting under the authority of, or in privity or concert with them, and each of them, be

6   permanently enjoined from directly or indirectly infringing the Helmet Patent;

7       C.     That judgment be entered for damages, together with prejudgment interest, to

8   compensate Plaintiff for Defendants' infringement of the Helmet Patent;

9       D.     That judgment be entered for treble damages pursuant to 35 U.S.C. § 284;

10      E.     That judgment be entered for additional damages pursuant to 35 U.S.C. § 289;

11      F.     That judgment be entered that this case is an exceptional case within the meaning

12  of 35 U.S.C. § 285, and for an award of reasonable attorney's fees to Plaintiff;

13      G.     That judgment be entered for costs to be awarded to Plaintiff; and

14      H.     For such other and further relief as the Court may deem proper under the

15  circumstances.

16  **AS TO THE ELEVENTH CLAIM**:

17      A.     That judgment be entered that Defendants have willfully infringed AddVenture's

18  Tractor-Trailer Patent, United States Letters Patent No. Des. 454,297;

19      B.     That Defendants, their agents, servants, employees, successors and assignors, and

20  all those acting under the authority of, or in privity or concert with them, and each of them, be

21  permanently enjoined from directly or indirectly infringing the Tractor-Trailer Patent;

22      C.     That judgment be entered for damages, together with prejudgment interest, to

23  compensate Plaintiff for Defendants' infringement of the Tractor-Trailer Patent;

24      D.     That judgment be entered for treble damages pursuant to 35 U.S.C. § 284;

25      E.     That judgment be entered for additional damages pursuant to 35 U.S.C. § 289;

26      F.     That judgment be entered that this case is an exceptional case within the meaning

27  of 35 U.S.C. § 285, and for an award of reasonable attorney's fees to Plaintiff;

28      G.     That judgment be entered for costs to be awarded to Plaintiff; and

**Complaint for Patent Infringement**

113879.000003/676634.01

1    H.     For such other and further relief as the Court may deem proper under the

2    circumstances.

3    **AS TO THE TWELFTH CLAIM**:

4    A.     That judgment be entered that Defendants have willfully infringed AddVenture's

5    Shoe Patent, United States Letters Patent No. Des. 455,341;

6    B.     That Defendants, their agents, servants, employees, successors and assignors, and

7    all those acting under the authority of, or in privity or concert with them, and each of them, be

8    permanently enjoined from directly or indirectly infringing the Shoe Patent;

9    C.     That judgment be entered for damages, together with prejudgment interest, to

10   compensate Plaintiff for Defendants' infringement of the Shoe Patent;

11   D.     That judgment be entered for treble damages pursuant to 35 U.S.C. § 284;

12   E.     That judgment be entered for additional damages pursuant to 35 U.S.C. § 289;

13   F.     That judgment be entered that this case is an exceptional case within the meaning

14   of 35 U.S.C. § 285, and for an award of reasonable attorney's fees to Plaintiff;

15   G.     That judgment be entered for costs to be awarded to Plaintiff; and

16   H.     For such other and further relief as the Court may deem proper under the

17   circumstances.

18

19   DATED: October 15, 2007              Respectfully submitted,

20                                        PROCOPIO, CORY, HARGREAVES &
                                               SAVITCH LLP

21

22

23

24                                        By: _____

25                                        Anthony J. Dain
                                          John L. Roberts
26                                        Attorney for Plaintiff
                                          ADDVENTURE PRODUCTS, INC.
27

28

**Complaint for Patent Infringement**

113879.000006/752917.01

**DEMAND FOR JURY TRIAL**

Pursuant to the Federal Rules of Civil Procedure, Plaintiff AddVenture Products, Inc. respectfully demands a trial by jury.


DATED: October 15, 2007                    Respectfully submitted,

                                           PROCOPIO, CORY, HARGREAVES &
                                                SAVITCH LLP



                                           By:
                                               Anthony J. Dain
                                               John L.  Roberts
                                               Attorney for Plaintiff
                                               ADDVENTURE PRODUCTS, INC.

22

**Complaint for Patent Infringement**

## Table of Exhibits

**Exhibit 1**, United States Letters Patent No. 5,042,227, Compression Patent...........25-33

**Exhibit 2**, United States Letters Patent No. Des. 431,184, Wine Bottle Patent........35-36

**Exhibit 3**, United States Letters Patent No. Des. 431,186, Light Bulb Patent.........38-39

**Exhibit 4**, United States Letters Patent No. Des. 431,456, House Patent...............41-42

**Exhibit 5**, United States Letters Patent No. Des. 439,151, Tractor/Semitrailer

   Patent............................................................................................44-45

**Exhibit 6**, United States Letters Patent No. Des. 439,153, Fish Patent.................47-48

**Exhibit 7**, United States Letters Patent No. Des. 441,282, Numeral One Patent......50-51

**Exhibit 8**, United States Letters Patent No. Des. 445,671, Beer Bottle Patent.........53-55

**Exhibit 9**, United States Letters Patent No. Des. 451,009, Capsule Patent.............57-58

**Exhibit 10**, United States Letters Patent No. Des. 452,649, Helmet Patent............60-61

**Exhibit 11**, United States Letters Patent No. Des. 454,297, Tractor-Trailer Patent...63-64

**Exhibit 12**, United States Letters Patent No. Des. 455,341, Shoe Patent...............66-67

**EXHIBIT 1**

# Exhibit 1

# United States Patent [19]

## Merry

[11] **Patent Number:** 5,042,227

[45] **Date of Patent:** Aug. 27, 1991

[54] **METHOD & APPARATUS FOR COMPRESSION PACKAGING**

[75] Inventor: **Wayne M. Merry,** St. Catherines, Canada

[73] Assignee: **659897 Ontario Limited,** St. Catherines, Canada

[21] Appl. No.: **451,051**

[22] Filed: **Dec. 15, 1989**

[51] Int. Cl.⁵ ............................................... B65B 63/02
[52] U.S. Cl. ......................................... 53/438; 53/442; 53/436; 223/57
[58] Field of Search ................. 53/436, 438, 121, 529, 53/439, 442; 223/57; 100/35

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,134,930 | 11/1938 | Reynolds | 128/285 |
| 2,336,744 | 12/1943 | Manning | 18/1 |
| 2,425,004 | 8/1947 | Rabell | 18/5 |
| 2,444,528 | 7/1948 | Popper et al. | 128/285 |
| 2,462,178 | 2/1949 | Ganz | 18/5 |
| 2,659,935 | 11/1953 | Hammon | 18/55 |
| 2,952,462 | 9/1960 | Planin | 273/157 |
| 3,189,669 | 6/1965 | Goldfein | 264/134 |
| 3,306,966 | 2/1967 | Matejcek | 264/321 |
| 3,342,922 | 9/1967 | Karpovich et al. | 264/321 |
| 3,504,064 | 3/1970 | Bauer | 264/28 |
| 4,096,230 | 6/1978 | Haerr | 264/321 |
| 4,168,599 | 9/1979 | King | 53/529 X |
| 4,241,007 | 12/1980 | Tanaka et al. | 264/324 |
| 4,377,061 | 3/1983 | Olson | 53/529 X |
| 4,529,569 | 7/1985 | Palau | 264/321 |
| 4,577,453 | 3/1986 | Hofeler | 53/438 |
| 4,757,669 | 7/1988 | Areblom | 53/526 X |

### FOREIGN PATENT DOCUMENTS

2084954  4/1982  United Kingdom ................. 53/121

*Primary Examiner*—John Sipos
*Attorney, Agent, or Firm*—Rogers, Bereskin & Parr

[57] **ABSTRACT**

The present invention provides a method of compacting a sheet article, for example an article of underwear, to produce a stable, substantially rigid, compacted article. This reduces space required for storage and distribution and facilitates packaging of the article. Compaction is effected by placing the article, or a plurality of articles, in a mould cavity, and subjecting them to elevated pressure for a certain time. The pressure and time are selected to compact the article sufficiently to form the stable, rigid body, but simultaneously not being so great as to either damage the article or compact it so much that water or other liquid is required to recover the article from its compacted state to its original state.

**14 Claims, 1 Drawing Sheet**



22

**U.S. Patent**          Aug. 27, 1991          **5,042,227**



18

<u>16</u>

20

12

10

14

FIG. 1



22

FIG. 2



24

22

FIG. 3

5,042,227

1

# METHOD & APPARATUS FOR COMPRESSION PACKAGING

## FIELD OF THE INVENTION

This invention relates to a method of compressing woven sheet articles, and such woven sheet articles when compressed. More particularly, it relates to a method of compressing such sheet articles into a compact form, which the article will retain after removal of the applied pressure but which will enable a user to return the sheet article to its original condition without the use of water or other liquid.

## BACKGROUND OF INVENTION

At the present time, there are a variety of known techniques for compressing fibrous articles, but no known techniques provide for compressing a woven sheet article such that it can be returned to its original condition without the use of some liquid agent.

U.S. Pat. No. 2,659,935 (Hammon); U.S. Pat. No. 2,952,462 (Planin); U.S. Pat. No. 3,306,496 (Matejcek); U.S. Pat. No. 3,189,669 (Goldfein); U.S. Pat. No. 3,342,922 (Karpovich et al.); U.S. Pat. No. 3,504,064 (Bauer); and U.S. Pat. No. 4,529,569 (Palau) generally relate to methods for compressing a sponge material to a compacted, stable condition. A variety of techniques are disclosed in these patents, depending upon the application of different agents, adhesives and temperatures and pressures. However, it is noteworthy that in all these proposals, some sort of liquid agent, usually water, is required to return the sponge article to its original expanded condition. Further, in all of these patents, except for the Planin Patent, U.S. Pat. No. 2,952,462, the article has approximately the same configuration in the compressed and expanded conditions; the Planin Patent is concerned with the sponge articles, such as a toy duck, which is compressed into a different form e.g. a circular disc. Some of the patents, e.g. the Bauer U.S. Pat. No. 3,504,064 require even more extreme conditions to return the article to its original shape, e.g. the application of both heat and steam. It is also noteworthy that these patents are concerned with a sponge material, rather than woven sheet material.

There are also a number of patents relating to machines and methods of making tampons. US patents showing such methods are U.S. Pat. No. 2,134,930 (Reynolds); U.S. Pat. No. 2,336,744 (Manning); U.S. Pat. No. 2,425,004 (Rabell); and U.S. Pat. No. 2,462,178 (Ganz). These patents disclose a variety of different techniques for compressing fibrous material to form tampons. There are some notable differences from the present invention. Thus, the material used is loose fibrous material, as exemplified by the Manning Patent in which fibrous material enters through an opening and is deposited on a screen where air pressure causes it to form the pads. Further, in the nature of the product, there is no necessity for the product to be able to resume any original, un-compressed state in the absence of moisture. Further, many of these patents disclose quite elaborate folding or forming techniques, e.g. the Rabell Patent, whereas as detailed below the present invention does not require such careful folding or forming of the un-compressed article.

U.S. Pat. No. 4,096,230 is another example of a sponge material which is compressed and is capable of returning to an un-compressed condition. This again relies upon the use of moisture to return to its original

2

shape. The article is a dehydrated prosthesis, for insertion end-wise into a body opening, e.g. the ear canal, where it absorbs moisture and returns to its original shape.

In the art of packaging woven sheet articles, a number of suppliers from the far East have developed techniques for compressing sheet articles under pressure to a compacted, solidified form, which is stable after the pressure has been released. However, this technique requires the article to be soaked in water, for its return to its original loose, un-compressed state. In general, the technique used is somewhat crude, with the applied pressure and other parameters not being significantly controlled, and indeed in many cases the operators are unaware of the exact conditions to which the articles are subjected. This technique is applied to such articles as face cloths, where clearly it is acceptable for them to be soaked in water to return the article to its original state in which it could be used. Since a face cloth is in any event wetted prior to use, this is no disadvantage.

U.S. Pat. No. 4,241,007 (Tanaka et al.) is an example of a technique for producing a compressed cloth-like article, which can be returned to its original state by absorption of water. Thus, this patent is intended for use on face cloths and the like. The patent suggests the use of very high pressures, in the range of 1,100 to 1,500 kilograms per square centimeter, preferably 1,200~1,300 kilograms per square centimeter. The larger range is equivalent to pressures in the range 15,640 to 21,330 psi, which is a very high pressure. In the light of the results discovered by the present applicant, discussed below, these pressures are surprising. In very general terms, applicant has discovered that, for a variety of materials, pressures in excess of a few thousand psi resulted in damage to the article. This U.S. Patent does refer to a published Japanese utility model Application No. 36,565/1977 which utilises a pressure as low as 30 kilograms per square centimeter, or approximately 425 psi. Again, this apparently is for an article which can be recovered to its original state by absorbing water. It is also noted that this Tanaka patented discusses in the examples the use of a binderless cellulosic non-woven fabric, which is somewhat different from the materials used by the present applicant. It is further noted that binderless cellulosic non-woven fabric appears to be higher in compression elasticity, thereby requiring higher pressures to ensure a well compressed product which is not wrinkled at the edges. Indeed, the example uses a control at a pressure 1,000 kilograms per square centimeters to show that the compression and moulding is inadequate at this pressure.

However, it will readily be appreciated that for many articles the technique of wetting a compressed article as purchased, in order to return it to an original un-compressed condition for use is entirely unacceptable. In effect, a user would have to wet the article to loosen and expand it, and then dry the article.

There are many articles for which it would be desirable to apply such a compression packaging technique. Articles such as socks, underwear, pantyhose are all relatively expensive to package. Indeed, for a product such as pantyhose, large amounts of money, time and effort are expended in developing satisfactory packaging techniques, which nonetheless require a significant amount of manual labour in the packaging of the product. Many of these articles are of relatively low cost, so that the packaging cost can be significant.

5,042,227

3

## SUMMARY OF THE PRESENT INVENTION

In accordance with the present invention, there is provided a method of compressing a woven sheet article to produce a solid, stable compacted article, the method comprising:

(a) placing the sheet article in a mould;

(b) subjecting the sheet article to an elevated pressure in the mould for a certain time, which pressure and time are selected so that the sheet article is compressed to form a stable, substantially rigid body, which retains substantially the shape of the mould after removal therefrom and which can be returned to its original un-compressed condition by manipulation thereof and without addition of any liquid;

(c) removing the compressed article from the mould.

Thus, in contrast to the prior art, the present invention is intended to provide a compressed woven sheet article which can be returned to its original state without having to soak it in water or other liquid. This enables the technique to be applied to a variety of commonly available articles, such as socks, underwear, pantyhose.

When such articles are compressed by the method of the present invention, they assume a compact shape which makes subsequent packaging steps quite simple. For example, if a pair of socks is compressed into a solid, generally disc-shape, then they can be packaged simply by being shrink-wrapped in a plastic film, with appropriate markings included on it or on a separate identification sheet. Further, during the compression step, there is no need for the socks or other articles to be folded in any particular manner. They could simply be dropped loosely into a cavity in a mould, thereby eliminating the necessity for any careful folding, etc. Nonetheless, in the compressed state, they provide a neat and tidy appearance.

A further advantage of compressing many woven articles is that it greatly reduces the space required for storage and transportation. Thus, many woven articles are of a relatively low density and require a lot of space for transportation and storage. When compressed by the method of the present invention, the storage and transportation problems are reduced, thereby saving on costs. Further, when articles such as socks are in a compressed, relatively solid form, they are easier to handle during storage and transportation.

Whilst the invention is primarily applicable to woven sheet articles, e.g. items of clothing, it is also envisaged that it could be applied to other articles, e.g. disposable or cloth baby diapers. In this case, an appropriately shaped mould would be provided, and the diapers would be compressed to reduce their bulk for packaging and storage. The end user would open up the diaper and by manipulation restore it to its expanded or un-compressed condition.

## DESCRIPTION OF THE DRAWING FIGURES

For better understanding the present invention and to show more clearly how it may be carried into effect, reference will now be made, by way of example, to the accompanying drawings in which,

FIG. 1 is a sectional view of a mould for carrying out the method of the present invention, including an article to be compressed;

FIG. 2 is a perspective view of an article after compression in the mould of FIG. 1; and

4

FIG. 3 is a planned view of the compressed article of FIG. 2, after enclosure in packaging.

## DESCRIPTION OF THE PREFERRED EMBODIMENT

Referring first to FIG. 1, there is shown a mould, generally indicated by the reference 10. The mould 10 has a lower mould part or body 12, which defines a generally cylindrical cavity 14. The cavity 14 is closed at this lower end. A plunger on piston 16 is also cylindrical and is dimensioned to form a close sliding fit in the cavity or bore 14.

As indicated by the arrow 18, the plunger 16 is mounted to be pressed downwardly into the cavity 14. However, it will be appreciated that, in known manner, it is immaterial which of the mould body 12 and plunger 16 move, and indeed both elements can be moved simultaneously towards one another.

A woven sheet article is indicated schematically at 20. The sheet article is simply dropped into the cavity 14, so that no part of it extends out of the cavity 14. In accordance with the present invention, it need not be necessary for the sheet article 20 to be folded in any way. The plunger 16 is then inserted into the top of the cavity 14, and a desired pressure applied to it. Once this pressure has been applied, it is held for a predetermined time.

In accordance with the present invention, and as discussed below in relation to specific examples, the pressure and time are selected so as to compact the article sufficiently to form a generally stable, solidified body, but simultaneously the compression is not so great as to prevent the article being returned to its original shape by an end user. In this respect, for some applications, it may be sufficient that the article is sufficiently compressed to be stable for only a relatively short time after removal from the mould 10. The article is then packaged in a close fitting package, which maintains the article in its compressed state. For other articles or applications, it can be preferred to compress the article sufficiently that it will retain a compressed, stable configuration for a long period of time. An important factor in determining an article's ability to retain a compressed condition is the tendency for the article to absorb moisture. This in turn both depends on the material of the article and how well it is protected from moisture. Thus, suitable packaging can assist in retaining the compressed state simply by preventing moisture from being absorbed.

To return the article to its original, un-compressed condition, where the article is in an individual package, the packaging is first removed. The user then simply pulls the article out of its compressed shape, by pulling on loose edges or corners of the article upon the exterior of the compressed article 22. With most articles, this can be done readily and simply. Certain articles, e.g. those formed from delicate fabrics, a certain degree of care may be required. Nonetheless, it is a simple matter for a user to pull the article out of its compressed state and return it to its original un-compressed state.

As a result of the compacting of the article, it will then almost certainly have been extensively creased. However, for many articles this is immaterial, e.g. underwear, or alternatively the creases will quickly disappear. Thus, for articles such as socks and pantyhose, the presence of creases is immaterial, since they effectively disappear once they are worn. For other articles such as

5,042,227

**5**

shop cloths, the presence of creases is immaterial to their function, or their appearance is immaterial.

FIG. 3 shows a plan view of the article 22 in the compressed or compacted condition of FIG. 2, when provided with packaging 24. The packaging 24 comprises a film of plastic material shrunk-wrapped around the exterior of the article 22, both to provide an attractive exterior package and to assist it in retaining its shape. It also prevents the infusion of water, i.e. provides an hermetic package. This type of packaging 24 can be used when the compressed condition will not be maintained for a long period of time either because of an inherent quality in the article or because of the nature of the compression step.

Four examples of the application of the present invention will now be discussed in relation to different types of woven sheet articles.

For these examples, the mould body 12 had an internal diameter of 2.24″.

### EXAMPLE 1

This first example was carried out on tube socks sold under the brand name "Family Dollar". The socks were 21″ in length and normally of size 10–15. The material of the socks comprised 80% cotton and 20% polyester. The following Table 1 gives the results obtained:

**6**

un-compacted condition. This condition is alternatively defined as "air recovery".

Thus, at pressures of 1,300 psi or less, the compaction was always unsuccessful, irrespective of the time. Similarly, for pressures of 2,600 psi or greater, damage occurred in all samples, irrespective of the duration of the time.

For pressures in the range 1,400–2,500 psi, successful compaction occurred. However, for the 1,400 psi and 2,500 psi values, compaction was only successful for certain time ranges. Thus, as might be expected, for the lower pressure, a greater time was required, and time of at least 2 seconds is required to get successful compaction at this pressure. Certainly, for the high pressure, long duration of compaction results in damage. Thus, at 2,500 psi, the pressure can only be applied for 2 seconds at the most, to avoid damage. In the narrower pressure range from 1,500 to 2,400, successful compaction occurred at all times in the chart.

It should be noted that longer times, e.g. 10 seconds were tried, and it was discovered that, as a general rule, the longer the stay time the more likely damage was to occur.

It is interesting to note that it is found that there was no point which required water to cause the socks to return to their original condition without damage. Ei-

**TABLE 1**

| PSI | .5/ | 1/ | 1.5/ | 2/ | 2.5/ | 3/ | 3.5/ | 4/ | 4.5/ | 5/ | 5.5/ | 6 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | SECONDS: | | | | | | | |
| 700 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 800 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 900 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 1000 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 1100 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 1200 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 1300 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 1400 | CU | CU | CU | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR |
| 1500 | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR |
| 1600 | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR |
| 1700 | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR |
| 1800 | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR |
| 1900 | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR |
| 2000 | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR |
| 2100 | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR |
| 2200 | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR |
| 2300 | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR |
| 2400 | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR |
| 2500 | NWR | NWR | NWR | NWR | DO | DO | DO | DO | DO | DO | DO | DO |
| 2600 | DO | DO | DO | DO | DO | DO | DO | DO | DO | DO | DO | DO |
| 2700 | DO | DO | DO | DO | DO | DO | DO | DO | DO | DO | DO | DO |
| 2800 | DO | DO | DO | DO | DO | DO | DO | DO | DO | DO | DO | DO |
| 2900 | DO | DO | DO | DO | DO | DO | DO | DO | DO | DO | DO | DO |
| 3000 | DO | DO | DO | DO | DO | DO | DO | DO | DO | DO | DO | DO |

In this Table 1, and also the data in the following Tables and four examples, the following abbreviations apply:
CU = Compaction unsuccessful
NWR = No water required for recovery of original shape
WR = Water required for recovery of original shape
DO = Damage occurred

As for all of the tests, the time employed varied from 0.5 seconds through to 6 seconds, at 0.5 second increments. The pressure in this example was varied from 700 to 3,000 psi. As can be seen, there is a broad range of values, denoted by NWR, where satisfactory compaction was achieved, without requiring water to enable an end user to recover the socks to their original

ther they could be recovered to their original condition without water, i.e. air recovered, or damage occurred.

For this example, the socks were inserted into the mould or die by rolling each sock individually from the top down. Two sock units were inserted into the die at a time, with the axis of the two rolled socks along the mould axis, so that the compacted article 22 comprised two compressed socks. This gave a disc shape having approximately the mould diameter of 2.24″ and a thickness of 0.625″ which varied slightly. Later tests showed that the manner in which the socks were rolled was immaterial, and indeed satisfactory compaction could be achieved if the socks were simply randomly inserted into the cavity 14.

5,042,227

7

## EXAMPLE 2

This second example was carried out using face cloths marketed under the brand name St. Mary's Fieldcrest Cannon. They had a composition of 90% cotton and 10% polyester. Again, two units of face cloths were inserted into the cavity **14** for each compaction. The following results were obtained:

8

For this example, acceptable pressures ranged from 1,300 to 2,800 psi. At the lower pressure of 1,300 psi, the minimum time to obtain satisfactory compaction was one and one-half seconds, whilst at the upper limit of 2,800 psi, the acceptable compaction time was three seconds or less. At the lower pressure below one and one-half seconds, compaction was unsuccessful, whilst damage occurred for times of three and one-half sec-

### TABLE 2

| PSI | .5/ | 1/ | 1.5/ | 2/ | 2.5/ | 3/ | 3.5/ | 4/ | 4.5/ | 5/ | 5.5/ | 6 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | SECONDS: | | | | | | | |
| 700 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 800 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 900 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 1000 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 1100 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 1200 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 1300 | CU | CU | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR |
| 1400 | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR |
| 1500 | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR |
| 1600 | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR |
| 1700 | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | WR |
| 1800 | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR |
| 1900 | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR |
| 2000 | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR |
| 2100 | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR |
| 2200 | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR |
| 2300 | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR |
| 2400 | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR |
| 2500 | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR |
| 2600 | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR |
| 2700 | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR |
| 2800 | WR | WR | WR | WR | WR | WR | DO | DO | DO | DO | DO | DO |
| 2900 | DO | DO | DO | DO | DO | DO | DO | DO | DO | DO | DO | DO |
| 3000 | DO | DO | DO | DO | DO | DO | DO | DO | DO | DO | DO | DO |

In this case, it was found that, with two face cloths per stroke, the face cloths were compacted to a height of ⅛".

As the results show, a wide range of pressure values were obtained in which the face cloths could be recovered to their un-compacted form, although approximately two-thirds of these required water to recover the face cloths to their compacted form. Clearly, for face cloths, the use of water is not always undesirable, but nonetheless the intention of the invention is to provide a method which does not require water for recovery. It is also to be borne in mind that, where water is required, it can take time for the water to be absorbed sufficiently for the face cloths to be pulled out of their compacted form. Where water is not required, it is often quicker to return the relevant article to its un-compacted form.

onds or longer at the higher pressure.

Also, it was generally found that at pressures equal to or greater than 1,800 psi, water was required to recover the shape of the face cloths. Although, it should be noted that at the upper time limit of six seconds in Table 2, water was necessary for recovery at a pressure of 1,700 psi.

Again, in general the longer the stay time for the pressure, the greater the chance that damage would occur. At times of ten seconds or greater, it was found that the chance of damage occurring was greatly increased.

### EXAMPLE 3

This example was carried out using shop cloth comprising 100% cotton, and marketed under the brand name Milliken & Kex. The results are tabulated in Table 3 below.

### TABLE 3

| PSI | .5/ | 1/ | 1.5/ | 2/ | 2.5/ | 3/ | 3.5/ | 4/ | 4.5/ | 5/ | 5.5/ | 6 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | SECONDS: | | | | | | | |
| 700 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 800 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 900 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 1000 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 1100 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 1200 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 1300 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 1400 | CU | CU | CU | CU | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR |
| 1500 | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR |
| 1600 | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR |
| 1800 | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR |
| 1700 | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR |
| 1900 | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR |
| 2000 | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR |

5,042,227

9

10

### TABLE 3-continued

| | SECONDS: | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PSI | .5/ | 1/ | 1.5/ | 2/ | 2.5/ | 3/ | 3.5/ | 4/ | 4.5/ | 5/ | 5.5/ | 6 |
| 2100 | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | WR |
| 2200 | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR |
| 2300 | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR |
| 2400 | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR |
| 2500 | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR |
| 2600 | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR | WR |
| 2700 | WR | WR | WR | WR | WR | WR | WR | WR | DO | DO | DO | DO |
| 2800 | DO | DO | DO | DO | DO | DO | DO | DO | DO | DO | DO | DO |
| 2900 | DO | DO | DO | DO | DO | DO | DO | DO | DO | DO | DO | DO |
| 3000 | DO | DO | DO | DO | DO | DO | DO | DO | DO | DO | DO | DO |

Again, two units of cloths were compacted per stroke, to give a finished thickness of three-quarters of an inch. The test was carried out by rolling the cloths and randomly placing the cloths in the cavity 14. This is not found to make any difference to the compaction.

Again, the broad range of acceptable pressures is from 1,400 to 2,700 psi. At the lower range of 1,400, it was found that the lowest time to give acceptable compaction was two and one-half seconds. Correspondingly, at the upper pressure of 2,700 psi, the maximum time to give acceptable compaction, without damage occurring, was four seconds.

Similarly to the second example, the lower part of the pressure range provided recovery without the use of water or air recovery, whilst the upper part of acceptable pressure range requires water for recovery. The division between these two parts occurs between the pressures of 2,100 and 2,200 psi. At the maximum time of 6 seconds with a pressure of 2,100 psi it was also found that water was required to recover the shop cloths.

Tables 1, 2 and 3 can be compared, since they relate to articles formed from cotton or a cotton/polyester blend. Thus, table 3 is a pure 100% cotton composition, whilst table 2 is a 90% cotton/10% polyester blend and table 1 is a 80% cotton/20% polyester blend.

The broad range of acceptable pressures is very similar for these three examples. Generally, a pressure of 1,300–1,400 psi or greater was found to give acceptable compaction, provided the stay or compaction time was sufficiently long. The second example, in fact, could be compacted successfully at a slightly lower pressure of 1,300 psi.

The acceptable upper pressure is also comparable in all three examples being in the range 2,500–2,800 psi for the three examples, depending upon the stay time.

Acceptable pressures at a time of 5 seconds should be considered, since this time often corresponds to the timing of other steps in a packaging operation. At 5 seconds, the acceptable lower pressure was 1,400 psi for both examples 1 and 3, and 1,300 for example 2. The acceptable upper pressure was 2,400, 2,700 and 2,600 for

examples 1, 2 and 3 respectively. If one took a pressure of 1,500 or 1,600 psi at 5 seconds, it would fall comfortably within the acceptable ranges for no water or air recovery for all three examples.

For the shop cloths of example 3, it should be noted that these shop cloths are often shipped in bulk to an end user, usually a large industrial plant. The cloths are then often laundered and treated prior to use.

To reduce shipping and transportation costs, it would be desirable to reduce the volume and bulk of the shop cloths. Accordingly, it is proposed to compress the shop cloths in large quantities into blocks containing as many as 200 shop cloths. Despite the fact that they are laundered prior to use, it is considered undesirable to require water to recover the cloths from the compressed block, or it takes considerable time for water to be absorbed into such a large block of compressed cloths. It is therefore preferred for the cloths to be capable of being separated by air recovery, i.e. without the use of water or other liquid.

A further advantage of compressing an article such as shop cloths, and indeed this applies to many other articles, is that it makes it more compact and hence more suitable for display and sale at a retail level. Shop cloths are relatively inexpensive items, and retailers are reluctant to give any prominent shelf space to such a low value item, when they could instead stock higher value items giving a better return. It is intended that compacted shop cloths, compacted individually or in small quantities, could be more easily handled at the retail level and make better use of shelf space. Further, they could be readily displayed at point of sale locations, to encourage purchase by occasional or impulsive buyers.

### EXAMPLE 4

This fourth example was carried out on pantyhose, namely pantyhose marketed under the brand name Leggs Sheer Energy 5B Sun Tan. The composition of the material was: hose, 19% spandex wrapped with 81% nylon; panty, 95% nylon with 5% spandex; and gusset, 55% cotton with 45% polyester. The results are tabulated in the following table 4.

### TABLE 4

| | SECONDS: | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PSI | .5/ | 1/ | 1.5/ | 2/ | 2.5/ | 3/ | 3.5/ | 4/ | 4.5/ | 5/ | 5.5/ | 6 |
| 700 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 800 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 900 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 1000 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 1100 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 1200 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 1300 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 1400 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 1500 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |

5,042,227

**11**                                                                          **12**

TABLE 4-continued

| | SECONDS: | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PSI | .5/ | 1/ | 1.5/ | 2/ | 2.5/ | 3/ | 3.5/ | 4/ | 4.5/ | 5/ | 5.5/ | 6 |
| 1600 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 1700 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 1800 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 1900 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 2000 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 2100 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 2200 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 2300 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 2400 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 2500 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 2600 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 2700 | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU | CU |
| 2800 | CU | CU | CU | CU | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR |
| 2900 | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR |
| 3000 | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR |
| 3100 | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | NWR | DO | DO | DO |
| 3200 | DO | DO | DO | DO | DO | DO | DO | DO | DO | DO | DO | DO |

As for the earlier examples, two units were compacted per stroke, to give a compacted disc shape with a height of one and three-quarter inches. The pantyhose was rolled from toe to panty prior to insertion into the cavity.

As the table shows, the range of acceptable pressures was relatively narrow, and at relatively high pressures. Further, note as for table 1, no point was found where water was required to recover the article, since damage occurred before such a condition was found.

The range of acceptable pressures range from 2,800 psi to 3,100 psi. At the lower limit of 2,800 psi, the minimum stay time for successful compaction is two and one-half seconds, whilst at the upper limit of 3,100 psi, the maximum stay time to avoid damage occurring is four and one-half seconds.

Again, bearing in mind a desirable time of 5 seconds, to fit into the cycle of other packaging machinery, a pressure of 2,800 psi is preferred, since this falls in the middle of the band of acceptable pressures at 5 seconds. The use of this pressure should ensure successful compaction, without any damage occurring.

It will be appreciated that whilst examples have been given for certain selected materials, the pressures and stay times can be varied dependent upon the material of the article. In general, this will depend upon the actual composition of the material of the article, as well as the nature of the article, i.e. whether it is loosely or tightly woven, etc. A person skilled in this art can readily determine acceptable pressures for different articles.

Whilst the invention has been described by way of example, in relation to certain specific materials and articles, it will be appreciated that it is applicable to a wide variety of materials. Thus, a variety of textiles could be compressed and packaged in accordance with the present invention. Such textiles include blankets, beach towels, mattress covers.

Further, the invention is believed to be particularly applicable to the packaging of both disposable and reusable cotton baby diapers. Particularly for disposable diapers, the diapers are quite bulky, which results in excessive packaging, handling and transportation costs. If their volume could be reduced, the costs of handling, transportation, etc. could be reduced. Further, an end-user or purchaser could more readily handle a package of compressed diapers.

In this respect, the term "woven sheet article" is to be construed in this specification including the claims as encompassing the fibrous material of disposable diapers.

Similar advantages can be obtained for reusable, woven, cloth diapers. In this case, it may even prove advantageous for companies providing a diaper service to use the compression and packaging method of the present invention. This again would save on handling and transportation charges, whilst presenting the user with a more attractive package of diapers.

I claim:

1. A method of compressing a woven sheet article comprising a blend of cotton and polyester, to produce a solid, stable, compacted article, the method comprising:

(a) placing the sheet article in a mould;

(b) subjecting the sheet article to an elevated pressure in the range of 1,300 p.s.i. to 2,500 p.s.i. for a certain time, which pressure and time are selected so that the sheet article is compressed to form a stable, substantially rigid, compacted article, which retains substantially the shape of the mould after removal therefrom and which compacted article can be returned to its original un-compacted condition by manipulation thereof without the addition of any liquid; and

(c) removing the compacted article from the mould.

2. A method as claimed in claim 1, wherein the material of the article comprises approximately 80% cotton and 20% polyester, and wherein during step (b) the pressure applied is in the range of 1,400 psi to 2,500 psi.

3. A method as claimed in claim 2, wherein during step (b) the pressure is applied for at least two seconds and the pressure is in the range 1,400–2,400 psi.

4. A method as claimed in claim 1, wherein the material of the article comprises 90% cotton and 10% polyester, and wherein during step (b), the applied pressure is in the range of 1,300–1,700 psi.

5. A method as claimed in claim 4, wherein during step (b), the pressure is applied for at least two seconds.

6. A method as claimed in claim 1, when applied to articles which are usually solid in pairs, wherein a pair of said articles are compacted together to form a single compacted article.

7. A method as claimed in claim 1, when applied to shop cloths, wherein a plurality of the shop cloths exceeding 50 are compressed together during step (b) to form a single compacted block of the shop cloths.

5,042,227

**13**

8. A method of compressing a woven sheet article comprising 100% cotton, to produce a solid, stable, compacted article, the method comprising: (a) placing the sheet article in a mould; (b) subjecting the sheet article to an elevated pressure in the range of 1,400 psi to 2,100 psi for a certain time, which pressure and time are selected so that the sheet article is compressed to form a stable, substantially rigid, compacted article, which retains substantially the shape of the mould after removal therefrom and which compacted article can return to the original un-compacted condition by manipulation thereof without the addition of any liquid; and (c) removing the compacted article from the mould.

9. A method as claimed in claim 8, wherein during step (b), the pressure is applied for a period of time greater than two seconds.

10. A method of compressing pantyhose having different portions formed from different materials, to produce a solid, stable, compacted article, the method comprising: (a) placing the pantyhose in a mould; (b) subjecting the pantyhose to an elevated pressure in the range of 2,800–3,100 PSI for a certain time, which pressure and time are selected so that the pantyhose is compressed to form a stable, substantially rigid, compacted article, which retains substantially the shape of the

**14**

mould after removal therefrom and which compacted article can be returned to the original un-compacted condition by manipulation thereof without the addition of any liquid; and (c) removing the compacted article from the mould.

11. A method as claimed in claim 10, wherein the pressure in step (b) is applied for a period of time greater than two seconds, and in the pressure range 2,800–3,000 psi.

12. A method as claimed in claim 3, 5, 9 or 11, wherein during step (b) the pressure is applied for five seconds.

13. A method as claimed in claim 2, 3, 5, 9 or 11, wherein after step (c) the following additional step is effected:

(d) packaging the compacted article in a close-fitting package which substantially seals the article from external moisture and assists in retaining the shape of the compacted article.

14. A method as claimed in claim 3, 5, 9 or 11, wherein the method is applied to a plurality of articles simultaneously, to form a single compacted article incorporating a plurality of the original articles.

* * * * *

# Exhibit 2

US00D431184S

# United States Patent [19]

## Davis

[11] **Patent Number:** **Des. 431,184**

[45] **Date of Patent:** ⁂ **Sep. 26, 2000**

[54] **COMPRESSED FABRIC ARTICLE PACKAGE**

[76] Inventor: **Alan Davis**, 5830 Oberlin Dr., Suite 202, San Diego, Calif. 92121

[**] Term: **14 Years**

[21] Appl. No.: **29/114,493**

[22] Filed: **Nov. 23, 1999**

[51] **LOC (7) Cl.** ........................................................ **09-03**

[52] **U.S. Cl.** ............................................. **D9/307;** D11/131

[58] **Field of Search** ............................. D9/307, 516, 549, D9/550; D11/131; 428/7, 9, 12, 542.2–542.8

[56] **References Cited**

### U.S. PATENT DOCUMENTS

D. 418,084  12/1999  Meurer ..................................... D11/131

*Primary Examiner*—Terry A. Wallace
*Attorney, Agent, or Firm*—Brown Martin Haller & McClain LLP

[57] **CLAIM**

The ornamental design for a compressed fabric article package, as shown.

### DESCRIPTION

FIG. 1 is a perspective view of a compressed fabric article package of the present invention, showing my new design;

FIG. 2 is a side elevation view, the opposite side being a mirror image thereof;

FIG. 3 is a bottom end view thereof; and,

FIG. 4 is a rear view thereof.

**1 Claim, 1 Drawing Sheet**



**U.S. Patent**          Sep. 26, 2000          **Des. 431,184**



FIG. 1

FIG. 2

FIG. 3

FIG. 4

**EXHIBIT 3**

# Exhibit 3



US00D431186S

# United States Patent [19]

**Davis**

[11] **Patent Number:** **Des. 431,186**

[45] **Date of Patent:** ★★ **Sep. 26, 2000**

[54] **COMPRESSED FABRIC ARTICLE PACKAGE**

[76] Inventor: **Alan Davis**, 5830 Oberlin Dr., Suite 202, San Diego, Calif. 92121

[★★] Term: **14 Years**

[21] Appl. No.: **29/114,490**

[22] Filed: **Nov. 23, 1999**

[51] **LOC (7) Cl.** ........................................................... **09-03**

[52] **U.S. Cl.** ............................................. **D9/330; D11/131**

[58] **Field of Search** ..................... D9/307, 330; D11/131, D11/157; D26/2; 428/7, 9, 12, 542.2–542.8

[56] **References Cited**

**U.S. PATENT DOCUMENTS**

D. 340,295  10/1993  Beauchamp ................................. D26/2

D. 406,203  3/1999  Cheung ............................... D11/157 X

*Primary Examiner*—Terry A. Wallace
*Attorney, Agent, or Firm*—Brown Martin Haller & McClain, LLP

[57] **CLAIM**

The ornamental design for a compressed fabric article package, as shown and described.

**DESCRIPTION**

FIG. 1 is a perspective view of a compressed fabric article package of the present invention, showing my new design;
FIG. 2 is a rear view thereof;
FIG. 3 is a side elevation view thereof, both sides being similar; and,
FIG. 4 is a lower end view thereof.

**1 Claim, 1 Drawing Sheet**



**U.S. Patent**    Sep. 26, 2000    **Des. 431,186**



FIG. 1

FIG. 2

FIG. 3

FIG.4

EXHIBIT 4

# Exhibit 4



US00D431456S

# United States Patent [19]

## Davis

[11] **Patent Number:** **Des. 431,456**

[45] **Date of Patent:** ** **Oct. 3, 2000**

[54] **COMPRESSED FABRIC ARTICLE PACKAGE**

[76] Inventor: **Alan Davis**, 5830 Oberlin Dr., Suite 202, San Diego, Calif. 92121

[**] Term: **14 Years**

[21] Appl. No.: **29/114,491**

[22] Filed: **Nov. 23, 1999**

[51] **LOC (7) Cl.** ........................................................ **09-03**

[52] **U.S. Cl.** .......................................... **D9/322; D11/131**

[58] **Field of Search** .................. D9/322, 307; D21/506; D11/131; 428/7, 9, 12, 542.2–542.8

[56] **References Cited**

### U.S. PATENT DOCUMENTS

D. 376,757 12/1996 Kress et al. ............................... D9/322

D. 379,145 5/1997 Hunt ......................................... D9/322

*Primary Examiner*—Terry A. Wallace
*Attorney, Agent, or Firm*—Brown Martin Haller & McClain LLP

[57] **CLAIM**

The ornamental design for a compressed fabric article package, as shown.

**DESCRIPTION**

FIG. 1 is a perspective view of a compressed fabric article package of the present invention, showing my new design;
FIG. 2 is a left side elevation view thereof;
FIG. 3 is a rear view thereof; and,
FIG. 4 is a lower end view thereof.

**1 Claim, 1 Drawing Sheet**



**U.S. Patent**               Oct. 3, 2000               **Des. 431,456**



FIG. 1



FIG. 2



FIG. 4



FIG. 3

**EXHIBIT 5**

# Exhibit 5

US00D439151S

(12) **United States Design Patent**

Davis

(10) Patent No.: **US D439,151 S**

(45) Date of Patent: ** **Mar. 20, 2001**

(54) **COMPRESSED FABRIC ARTICLE PACKAGE HAVING A SIMULATED TRACTOR/ SEMITRAILER SHAPE**

(76) Inventor: **Alan Davis**, 5830 Oberlin Dr., Suite 202, San Diego, CA (US) 92121

(**) Term: **14 Years**

(21) Appl. No.: **29/117,657**

(22) Filed: **Jan. 27, 2000**

(51) **LOC (7) Cl.** ........................................ **09-03**

(52) **U.S. Cl.** ............................................. **D9/308**

(58) **Field of Search** .................. D9/307, 308; D21/424, D21/434, 552, 558, 560; 206/457; 229/116.1, 116.4

(56) **References Cited**

U.S. PATENT DOCUMENTS

D. 371,959 * 7/1996 Hupp ...................................... D9/308

D. 386,399 * 11/1997 Stokely et al. ........................ D9/308
4,643,349 * 2/1987 Sheffer .............................. 229/116.4

* cited by examiner

*Primary Examiner*—Terry A. Wallace
(74) *Attorney, Agent, or Firm*—Brown Martin Haller & McClain, LLP

(57) **CLAIM**

The ornamental design for a compressed fabric article package having a simulated tractor/semitrailer shape, as shown.

**DESCRIPTION**

FIG. 1 is a front perspective view of a compressed fabric article package having a simulated tractor/semitrailer shape of the present invention, showing my new design;
FIG. 2 is a bottom plan view thereof;
FIG. 3 is a back elevation view thereof; and,
FIG. 4 is a front end elevation view thereof.

**1 Claim, 1 Drawing Sheet**



**U.S. Patent**             Mar. 20, 2001             US D439,151 S



FIG. 1



FIG. 2



FIG. 3



FIG. 4

**EXHIBIT 6**

# Exhibit 6

US00D439153S

(12) **United States Design Patent**
Davis

(10) Patent No.:        **US D439,153 S**
(45) Date of Patent:    ** **Mar. 20, 2001**

(54) **COMPRESSED FABRIC ARTICLE PACKAGE HAVING A SIMULATED FISH SHAPE**

(76) Inventor: **Alan Davis**, 5830 Oberlin Dr., Suite 202, San Diego, CA (US) 92121

(**) Term: **14 Years**

(21) Appl. No.: **29/117,666**

(22) Filed: **Jan. 27, 2000**

(51) **LOC (7) Cl.** ........................................ **09-03**
(52) **U.S. Cl.** ............................................. **D9/310**
(58) **Field of Search** .................. D9/307, 310; D21/599; 206/457; 229/116.1, 116.3

(56) **References Cited**

U.S. PATENT DOCUMENTS

D. 63,314 * 11/1923 Pease ..................................... D9/310
D. 182,562 * 4/1958 Bang ...................................... D9/310

* cited by examiner

*Primary Examiner*—Terry A. Wallace
(74) *Attorney, Agent, or Firm*—Brown Martin Haller & McClain LLP

(57)                **CLAIM**

The ornamental design for a compressed fabric article package having a simulated fish shape, as shown and described.

**DESCRIPTION**

FIG. **1** is a front perspective view of a compressed fabric article package having a simulated fish shape of the present invention, showing my new design;
FIG. **2** is a top plan view thereof, the bottom view being equivalent;
FIG. **3** is a back elevation view thereof; and,
FIG. **4** is a tail end elevation view thereof.

**1 Claim, 1 Drawing Sheet**



**U.S. Patent**             Mar. 20, 2001             US D439,153 S



FIG. I

FIG. 2



FIG. 3

FIG. 4

# Exhibit 7

(12) **United States Design Patent**      (10) Patent No.:     **US D441,282 S**

Davis      (45) Date of Patent:    ✱✱    **May 1, 2001**

---

(54) **COMPRESSED FABRIC ARTICLE PACKAGE HAVING A SIMULATED NUMERAL ONE (1) SHAPE**

(76) Inventor: **Alan Davis**, 5830 Oberlin Dr., Suite 202, San Diego, CA (US) 92121

(✱✱) Term: **14 Years**

(21) Appl. No.: **29/114,488**

(22) Filed: **Nov. 23, 1999**

(51) LOC (7) Cl. ........................................................ **09-03**

(52) U.S. Cl. ............................................................. **D9/333**

(58) Field of Search ................... D9/307, 333; 206/457; D18/24, 27, 30; D19/59; D21/478, 484, 493; 229/116.1; D11/157, 61

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D. 248,936 | * 8/1978 | Lohan | D11/157 |
| D. 268,096 | * 3/1983 | Austin et al. | D9/333 |
| D. 304,458 | * 11/1989 | Mowry, Jr. | D18/24 |
| D. 319,577 | * 9/1991 | Schwarz | D9/333 |
| D. 382,086 | * 8/1997 | Peoples-allen et al. | D18/30 X |

* cited by examiner

*Primary Examiner*—Terry A. Wallace

(74) *Attorney, Agent, or Firm*—Brown Martin Haller & McClain

(57) **CLAIM**

The ornamental design for a compressed fabric article package having a simulated numeral one (1) shape, as shown.

**DESCRIPTION**

FIG. 1 is a perspective view of a compressed fabric article package having a simulated numeral one (1) shape of the present invention, showing my new design;

FIG. 2 is a left side elevation view;

FIG. 3 is a bottom end view thereof; and,

FIG. 4 is a rear view thereof.

**1 Claim, 1 Drawing Sheet**



**U.S. Patent**                    May 1, 2001                    US D441,282 S



FIG.1

FIG. 2

FIG. 3

FIG. 4

**EXHIBIT 8**

# Exhibit 8

US00D445671S

**(12) United States Design Patent** (10) Patent No.: **US D445,671 S**

Davis                                              (45) Date of Patent: **        Jul. 31, 2001**

(54) **COMPRESSED FABRIC ARTICLE PACKAGE HAVING A SIMULATED NECKED BOTTLE SHAPE**

(76) Inventor: **Alan Davis**, 5830 Oberlin Dr., Suite 202, San Diego, CA (US) 92121

(**) Term: **14 Years**

(21) Appl. No.: **29/117,667**

(22) Filed: **Jan. 27, 2000**

(51) LOC (7) Cl. ......................................................... **09-03**

(52) U.S. Cl. .......................................................... **D9/307**

(58) Field of Search ............................ D9/307, 516, 549, D9/550; D11/131; 428/7, 9, 12, 542.2–542.8; 206/457; 229/116.1–116.5

(56) **References Cited**

U.S. PATENT DOCUMENTS

| D. 99,653 | * | 5/1936 | Zetzmann | .............................. | D9/331 |
| D. 411,442 | * | 6/1999 | Edson et al. | ........................... | D9/307 |
| D. 418,084 | * | 12/1999 | Meurer | ................................. | D11/131 |
| D. 422,490 | * | 4/2000 | Nemeth et al. | ........................ | D9/307 |

* cited by examiner

*Primary Examiner—*Mitchell Siegel

(74) *Attorney, Agent, or Firm—*Brown Martin Haller & McClain LLP

(57) **CLAIM**

The ornamental design for a compressed fabric article package having a simulated necked bottle shape, as shown and described.

**DESCRIPTION**

FIG. **1** is a front elevation view of a compressed fabric article package having a simulated necked bottle shape of the present invention, showing my new design;

FIG. **2** is a side elevation view thereof, both sides being equivalent;

FIG. **3** is a rear elevation view thereof;

FIG. **4** is a top plan view thereof;

FIG. **5** is a bottom plan view thereof;

FIG. **6** is a front elevation view of a shorter embodiment of the package of the present invention;

FIG. **7** is a side elevation view of the configuration of FIG. **6**, both sides being equivalent;

FIG. **8** is a rear elevation view of the configuration of FIG. **6**;

FIG. **9** is a top plan view of the configuration of FIG. **6**; and,

FIG. **10** is a bottom plan view of the configuration of FIG. **6**.

**1 Claim, 2 Drawing Sheets**





FIG. 1    FIG.2    FIG. 3

FIG.4    FIG. 5



FIG.6    FIG.7    FIG.8

FIG.9    FIG.10

EXHIBIT 9

# Exhibit 9

US00D451009B2

(12) **United States Design Patent** (10) Patent No.: **US D451,009 S**
Davis (45) Date of Patent: ✱✱ **Nov. 27, 2001**

(54) **COMPRESSED FABRIC ARTICLE PACKAGE HAVING A SIMULATED CAPSULE SHAPE**

(76) Inventor: **Alan Davis**, 5830 Oberlin Dr., Suite 202, San Diego, CA (US) 92121

(**) Term: **14 Years**

(21) Appl. No.: **29/117,665**

(22) Filed: **Jan. 27, 2000**

(51) **LOC (7) Cl.** ......................................................... 09-03
(52) **U.S. Cl.** ............................................................. D9/307
(58) **Field of Search** ............................... D9/307; D1/127, D1/199; D24/100–104; 206/457; 229/116.1–116.5; 428/7, 9, 12, 542.2–542.8

(56) **References Cited**

U.S. PATENT DOCUMENTS

D. 31,133 ✱ 7/1899 Lantz ..................................... D24/100
D. 406,187 ✱ 3/1999 Garcia ................................... D1/199

* cited by examiner

*Primary Examiner*—Terry A. Wallace
(74) *Attorney, Agent, or Firm*—James W. McClain; Brown, Martin, Haller & McClain LLP

(57) **CLAIM**

The ornamental design for a compressed fabric article package having a simulated capsule shape, as shown and described.

**DESCRIPTION**

FIG. **1** is a front perspective view of a compressed fabric article package having a simulated capsule shape of the present invention, showing my new design;

FIG. **2** is a back elevation view thereof;

FIG. **3** is a side elevation view thereof, both sides being equivalent; and,

FIG. **4** is a bottom plan elevation view thereof, the top plan view being equivalent.

1 Claim, 1 Drawing Sheet



**U.S. Patent**                     Nov. 27, 2001                     **US D451,009 S**



FIG. 1

FIG. 2

FIG. 3

FIG. 4

**EXHIBIT 10**

# Exhibit 10



US00D452649B1

(12) **United States Design Patent**
Davis

(10) Patent No.: **US D452,649 S**
(45) **Date of Patent:** ** **Jan. 1, 2002**

(54) **COMPRESSED FABRIC ARTICLE PACKAGE HAVING A HELMET SHAPE**

(76) Inventor: **Alan Davis**, 5830 Oberlin Dr., Suite 202, San Diego, CA (US) 92121

(**) Term: **14 Years**

(21) Appl. No.: **29/132,896**

(22) Filed: **Nov. 17, 2000**

(51) **LOC (7) Cl.** .......................................................... **09-03**
(52) **U.S. Cl.** ................................................................ **D9/320**
(58) **Field of Search** ............................ D9/307, 319, 320; D29/102, 106; 206/457; 229/116.1, 116.5

(56) **References Cited**

**U.S. PATENT DOCUMENTS**

| | | | |
|---|---|---|---|
| D. 338,546 | * | 8/1993 | Barker .................................. D29/106 |
| D. 369,543 | * | 5/1996 | Culless ................................. D9/320 |
| D. 383,953 | * | 9/1997 | Deflippo ........................... D29/106 X |

D. 387,660 * 12/1997 Packard .............................. D9/307 X

* cited by examiner

*Primary Examiner*—Terry A. Wallace
(74) *Attorney, Agent, or Firm*—James W. McClain; Brown, Martin, Haller & McClain

(57) **CLAIM**

The ornamental design for a compressed fabric article package having a helmet shape, as shown.

**DESCRIPTION**

FIG. 1 is a front view of a compressed fabric article package having a helmet shape, showing my new design;
FIG. 2 is a right hand side view thereof;
FIG. 3 is a top plan view thereof;
FIG. 4 is a bottom plan view thereof;
FIG. 5 is a left hand side view thereof; and,
FIG. 6 is a rear view thereof.

**1 Claim, 1 Drawing Sheet**



**U.S. Patent**          Jan. 1, 2002          US D452,649 S



FIG. I

FIG.2

FIG. 3

FIG.4

FIG. 5

FIG.6

**EXHIBIT 11**

# Exhibit 11

US00D454297S

(12) **United States Design Patent**    (10) Patent No.:    **US D454,297 S**

Davis    (45) Date of Patent:    ✱✱ **Mar. 12, 2002**

(54) **COMPRESSED FABRIC ARTICLE PACKAGE HAVING A TRACTOR-TRAILER SHAPE**

(76) Inventor: **Alan Davis**, 5830 Oberlin Dr., Suite 202, San Diego, CA (US) 92121

(✱✱) Term: **14 Years**

(21) Appl. No.: **29/138,975**

(22) Filed: **Mar. 22, 2001**

(51) **LOC (7) Cl.** ..................................................... **09-03**
(52) **U.S. Cl.** ..................................................... **D9/308**
(58) **Field of Search** ................. D9/307, 308; D21/424, D21/434, 552, 558, 560; 206/457; 229/116.1–116.5

(56) **References Cited**

U.S. PATENT DOCUMENTS

4,643,349 A ✱ 2/1987 Sheffer ..................... 229/116.4
D371,959 S ✱ 7/1996 Cupp .......................... D9/308
D386,399 S ✱ 11/1997 Stokley et al. ............... D9/308

✱ cited by examiner

*Primary Examiner*—Terry A. Wallace
(74) *Attorney, Agent, or Firm*—Brown, Martin, Haller & McClain, LLP

(57)    **CLAIM**

The ornamental design for a compressed fabric article package having a tractor-trailer shape, as shown.

**DESCRIPTION**

FIG. 1 is a front view of a compressed fabric article package having a tractor-trailer shape, showing my new design;

FIG. 2 is a top plan view thereof;

FIG. 3 is a rear view thereof;

FIG. 4 is a bottom plan view thereof;

FIG. 5 is a right side elevational view thereof; and,

FIG. 6 is a left side elevational view thereof.

**1 Claim, 1 Drawing Sheet**



**U.S. Patent**                    Mar. 12, 2002                    US D454,297 S



FIG. I

FIG. 2

FIG. 3

FIG. 4

FIG. 5          FIG. 6

# Exhibit 12

US00D455341S

(12) **United States Design Patent**          (10) Patent No.:          **US D455,341 S**

Davis          (45) Date of Patent:     ** **Apr. 9, 2002**

(54) **COMPRESSED FABRIC ARTICLE PACKAGE HAVING A SHOE SHAPE**

(76) Inventor: **Alan Davis,** 5830 Oberlin Dr., Suite 202, San Diego, CA (US) 92121

(**) Term: **14 Years**

(21) Appl. No.: **29/138,978**

(22) Filed: **Mar. 22, 2001**

(51) LOC (7) Cl. ..................................................... **09-03**

(52) U.S. Cl. ..................................................... **D9/319**

(58) Field of Search .................. D9/307, 319; 206/457; 229/116.1–116.5

(56) **References Cited**

**U.S. PATENT DOCUMENTS**

| | | | | |
|---|---|---|---|---|
| D337,723 S | * | 7/1993 | Cordeiro | D9/319 |
| D348,389 S | * | 7/1994 | Nigro | D9/319 |
| D382,197 S | * | 8/1997 | Hatzileris | D9/319 |

* cited by examiner

*Primary Examiner*—Terry A. Wallace

(74) *Attorney, Agent, or Firm*—Brown, Martin, Haller & McClain LLP

(57)          **CLAIM**

The ornamental design for a compressed fabric article package having a shoe shape, as shown.

**DESCRIPTION**

FIG. 1 is a front view of a compressed fabric article package having a shoe shape, showing my new design;

FIG. 2 is a top plan view thereof;

FIG. 3 is a rear view thereof;

FIG. 4 is a left end elevational view thereof;

FIG. 5 is a bottom plan view thereof; and,

FIG. 6 is a right end elevational view thereof.

**1 Claim, 1 Drawing Sheet**



**U.S. Patent**                    Apr. 9, 2002            US D455,341 S



FIG. 1

FIG. 2

FIG. 3

FIG. 4

FIG. 5

FIG. 6

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
ADDVENTURE PRODUCTS, INC., a California corporation

## DEFENDANTS
ROBERT WEINBERG, an individual; WHITSON WELLS PMG, LLC, a Texas Limited Liability Company, and DOES 1-10, collectively d/b/a "Purple G"

FILED
'07 OCT 18   PM 4: 15

(b) County of Residence of First Listed Plaintiff San Diego, CA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant Dallas, Texas
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Anthony J. Dain
John L. Roberts
Procopio, Cory, Hargreaves & Savitch LLP
530 B Street, Suite 2100, San Diego CA 92101-4469
(619) 238-1900

Attorneys (If Known)

BY:                        DEPUTY

'07 CV   2024 JAH (BLM)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☒ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | PERSONAL PROPERTY | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | LABOR | SOCIAL SECURITY | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 862 Black Lung (923) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 790 Other Labor Litigation | FEDERAL TAX SUITS | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | ☐ 791 Empl. Ret. Inc. | ☐ 870 Taxes (U.S. Plaintiff | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | Security Act | or Defendant) | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | 26 USC 7609 | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)
Transferred from                                              Appeal to District

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
35 U.S.C. Section 271

Brief description of cause:
Patent Infringement

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23       DEMAND $       CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions)       JUDGE                    DOCKET NUMBER

DATE 10/18/07       SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY
RECEIPT # 143681       AMOUNT $350       APPLYING IFP No 10/19/07 JUDGE       MAG. JUDGE

American LegalNet, Inc.
www.USCourtForms.com

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 143681    – KD**

**October 18, 2007
16:36:46**

**Civ Fil Non-Pris**
USAO #.: 07CV2024
Judge..: JOHN A HOUSTON
Amount.:                    $350.00 CK
Check#.: BC 5081

**Total–>  $350.00**

FROM: CIVIL FILIING
      ADDVENTURE PRODUCTS, INC. ET A
      WEINBERG, ET AL