# EXHIBIT 1

1

**D. Scott Hemingway**
TX Bar No. 09407880

2
Hemingway & Hansen, LLP
1717 Main Street, Suite 2500
Dallas, Texas 75201

3
Phone: (214) 292-8301
Fax:    (214) 739-5209

4
Email: shemingway@hemlaw.org

5
**Douglas A. Pettit**
Pettit Kohn Ingrassia & Lutz PC
12250 El Camino Real, Ste 350

6
San Diego, CA 92130
Phone: (858) 755-8500

7
Fax: (858) 755-8504
dpettit@pettitkohn.com

8
Attorney for Robert Weinberg, Whitson Wells
PMG, LLC and "Purple G"

9

10
### UNITED STATES DISTRICT COURT FOR THE

11
### SOUTHERN DISTRICT OF CALIFORNIA

12
### SAN DIEGO DIVISION

13

14
ADDVENTURE PRODUCTS, INC., a California corporation,

Case No:3:07-CV-02024-BTM-AJB

15
Plaintiff,

**DECLARATION OF ROBERT S. WEINBERG IN SUPPORT OF WHITSON WELLS PMG, LLC, AND "PURPLE G" MOTION TO DISMISS**

16
vs.

17
ROBERT WEINBERG, et al.,

18
Defendants.

19

20

21
### ROBERT S. WEINBERG DECLARATION IN SUPPORT OF MOTION TO DISMISS

22

23
I, Robert S. Weinberg, declare as follows:

24

25

1.    Defendant Whitson Wells PMG, LLC is a limited liability company incorporated in Texas, and I am the Managing Director of this entity. "Purple G" is an entity doing business under that name, and it is directly affiliated with Whitson Wells PMG, LLC.

2.    Both Whitson Wells PMG, LLC and Purple G operate from Dallas, Texas, and neither of these entities is located in or operates out of the State of California, the Southern District of California, or San Diego, California.

3.    Whitson Wells PMG, LLC and Purple G are not corporations or business entities registered with the California Secretary of State's office, and neither entity is engaged in any regular and established business in the State of California, the Southern District of California or San Diego, California relating to compressed fabric promotional articles.

4.    Whitson Wells PMG, LLC does not directly engage in any promotional or marketing sales activities, and Whitson Wells PMG, LLC does not offer, sell, invoice or ship any promotional or marketing materials of any kind to anyone or anywhere, including the State of California, the Southern District of California or San Diego, California.

5.    Whitson Wells PMG, LLC does not directly make, use, sell or offer for sale any compressed fabric promotional items or conduct any type of business with those articles that could be considered to be covered by any of the accusations in this Complaint.

6.    Whitson Wells PMG, LLC does not operate a website for Whitson Wells PMG, LLC to advertise or promote any services related to compressed fabric promotional articles.

7.    Whitson Wells PMG, LLC and Purple G have never shipped or consummated the sale of any compressed fabric promotional product in or to the State of California, the Southern District of California or San Diego, California.

Declaration of Robert S. Weinberg
In Support of Whitson Wells PMG, LLC and
"Purple G" Motion to Dismiss

2

8.    Purple G has not directly engaged in any promotional or marketing sales activities related to compressed fabric promotional items in the State of California, the Southern District of California or San Diego, California, and Purple G has not consummated any sales of, or shipped, any compressed promotional items to anyone in the State of California, the Southern District of California or San Diego, California.

9.    Purple G has not directly made, used, or consummated the sale of any compressed fabric promotional items or conducted any type of business with those articles that could be considered to be covered by any of the accusations in this Complaint in the State of California, the Southern District of California or San Diego, California.

10.    Purple G operates a website, but it is passive website that does not allow for interactive responses from the website browser.  The Purple G website does not allow for orders to be submitted, and there is no contact information that is provided on the website to allow browsers to respond to the website.

11.    None of the compressed fabric promotional items produced, sold or marketed by Purple G in other forums are capable of being returned to its original un-compacted condition by manipulation without the addition of a liquid.  Like the Plaintiff Addventure Products' compacted fabric promotional items, the compacted promotional items produced and sold by Purple G require the addition of water during a wash cycle.  *See attached Addventure Prods. Catalog, p. 5 (showing washing necessary to get fabric back to un-compacted state).*  As such, both the Purple G and the Plaintiff's compacted promotional items do not practice a vital and necessary step in the only utility patent asserted in this matter.  *See Claims 1, 8, and 10 of U.S. Patent No. 5,042,227.*

1    12.    None of the compressed fabric items produced or sold by Purple G in other forums

2    include, possess, or contain the ornamental and protectible aspects of the asserted design

3    patents.

4

5    I declare the above to be true and correct under penalty of perjury.

6

7    12/3/07

8    ‾‾‾‾‾‾‾‾‾‾‾‾        ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
       Date                    Robert S. Weinberg

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



## {index}

**CompressT**
Shape your brand with a custom shaped t-shirt.
PAGE 04

**SpecialT Printing**
Take your artwork to the next level with specially screen printing.
PAGE 14

**LogoWeld™**
Enhance your brand with this premium solution.
PAGE 16

**ShapeMags**
Attraction guaranteed with these custom shaped magnets and stickers.
PAGE 19

**ShapePack**
Pack your tees in our custom shaped boxes.
PAGE 20

**BooShirt**
Breathe a little easier with these silky smooth shirts.
PAGE 22

**EcoWipes**
Get handy with wipes that grow before your eyes.
PAGE 23

ASI 31940   PPAI 111053   SAGE 50211   UPIC COMPREST

## ADDVENTURE™
Add Impact · Add Value



AddVenture was founded in New York in 1981 as A. Davis Design. When we moved to Southern California in 1992 our name was changed to AddVenture Products, (hence the double D). AddVenture is an award-winning supplier of innovative shaped promotional products. Back in 1988, we introduced the first postcard compressed t-shirt to the world.

As the creator of the original CompressT, we hold numerous design and utility patents. AddVenture ships everything out of our corporate headquarters and manufacturing facility in Southern California.

The heartbeat of AddVenture's success is found in the extraordinary trust our distributor partners place in us. On-time delivery is the core of our culture and is as important to us as it is to our customers. We are committed to shaping the success of our partners by building brand value and by delivering reliable first class service for every customer every time.



# WHAT IS A COMPRESS-T™

Compress-T is completely unique from start to finish. Starting with your choice of 100% cotton t-shirt, we screen print your graphic, and then compress your tee under tremendous pressure into the solid custom shape of your choice. Your artwork is displayed on a high quality insert card visible through the package, transforming each t-shirt into a custom marketing tool. The result is an unforgettable promotion that fits into the palm of your hand and adds shape to your brand.

## SAMPLE USES:

- Product Launches
- Company Promotions
- Sales Promotion
- Trade Show Give Aways
- Coupon Inserts
- Gift with Purchase
- Product Recognition
- Creative Packaging
- Direct Mail
- In Store Promotions
- Invitations
- Meetings and Events
- Vending Machines
- Point of Purchase Display
- On Pack Promotions

## EASY AS 1-2-3



STEP 1
Your logo or design is screen printed onto a 100% cotton brand name t-shirt.

STEP 2
Our special process compresses and vacuums the t-shirt under tremendous pressure into small solid packages.

STEP 3
Open the package, then wash and dry and it will return to its regular shape with your message easily to wear.

ASI 31940    PPAI 111053    SAGE 50211    UPIC COMPREST

DESIGN














## CUSTOM SHAPED

Differentiate your brand from the competition with a promotion that is undeniably unique. Send us your custom art to design a mold that differentiates you from the rest. Our state-of-the-art engineering process will make your promotion stand out.

FROM THE PLAN,
TO THE MOLD,
TO YOUR TARGET.






HUMMER
- Go where only the very few dare venture.
- A big shape that drove the unique campaign message.

MSNBC
- Brand the MSNBC logo in a colorful and unique way.
- A custom Compress! that struts as proud as a peacock.

ALL
- Create a custom promotion for a fresh, new line.
- A clever item that cleaned up the competition.

AS3-31940  PAN 111683  SAGE 56211  UPIC COMPRESST





COMPREST

# ADD ANOTHER DIMENSION

Design your Comprest™ to come to life in 3D packaging. Enhance your custom t-shirt by adding a second or third insert card. By transforming your artwork into a replica of your brand, this promotion becomes the real thing.

**GET TOASTED WITH QUIZNOS**

### QUIZNOS

- purpose: Give us a t-shirt sleeve that looks just like our sandwich package.
- result: A promotion that looked good enough to eat.

### MENTOS

- purpose: Give us a t-shirt giveaway that looks like the real package.
- result: This promotion took our breath away.

### T/TAPE

- purpose: Simulate our product for a promotion.
- result: A miniature replica of their product on a stick.

A03 31940    PR4111053    SAGE 50011    UPC COMPREST



**CARTOON NETWORK**
client: CARTOON NETWORK
purpose: Create awareness for our new cartoon network.
result: A real hot versatile.

**U.S. PLAYING CARD**
client: U.S. PLAYING CARD
purpose: Have the promotion stack against our card.
result: This royal shape was a winning hand.

**ALLISON TRANSMISSION**
client: ALLISON TRANSMISSION
purpose: Create a unique retail item for their store.
result: A t-shirt that promotes the deal.

# HOW TO USE A COMPRESS™

There are no limits when imagination adds value to your promotion. Add stickers, coupons, direct mailing, or product to increase the visibility of your brand. Convert your CompressT into a unique way to measure the success of your promotion or to directly drive purchasing.

### PARAMOUNT PICTURES
- Promote the "Stardust" movie release.
- The enclosed stars added magic to this promotion.




### VOKAB KOMPANY
- Provide added value to our CD release.
- This unique promotion rocks!






### EQUIPMENT WEBSERVICES
- Beef up Salsa with a unique promotion.
- This structured snack package, packed on a Styrofoam tray, included a sticker to generate sales leads.

### MICROSOFT
- Design a fun way to participate in a new product launch.
- A unique eartram these thrilled lucky barcode scan winners.

AG 31940    PPM 11HG03    SAGE 50211    UPC COMPRESS




# SPECIAL™ PRINTING

Let us transform your promotion into a garment with a retail rich flavor that subtly elevates your brand. Bring your creative ideas to the next level of screen printing with innovative techniques such as velveteen, sparkle, high density inks, vintage wash and more.





### BLING

Great for design focused promotions. You have a rich retail look that will provide a sophisticated touch to any logo or to enhance graphics.





### VINTAGE WASH

Used for a sincerely old school effect. Vintage Wash offers a soft hand feel on dark garments.





#### SPARKLE

Add shimmer and shine with an extra layer of fluid crystals. Sparkle ink can be added to almost any color for a glamorous and glistening result.

#### METALLIC

Metallic inks add shimmer and shine to your design or logo. Iridescent inks enhance the surface and texture of your wardrobe.

#### VELVETEEN

Beautifully accent designs with a special soft flocked fiber. Textures like suede and chenille give your apparel a uniquely delicate feel.

ASI 31840   PPAI 111063   SAGE 50211   UPIC COMPRO,13



**process:** Index and Process Colors

**result:** Your complex graphic images will come alive with the use of vibrant colors and detailed shading. See what these award winning separations can do for your project.

**process:** Jumbo Screen Printing

**uses:** Got a huge canvas to print? Use our jumbo screens for larger prints that demand to be seen. With oversized decoration to occupy your imagination your promotional results are massive.



# WHAT IS LOGOWELD?

LogoWeld™ is a process of sonically welding layers of vinyl to fabric. This premium promotional solution fuses a 3-dimensional applique to high quality apparel and accessories. We design and cut custom dies from your artwork in-house. LogoWeld™ can be used alone or combined with silk screening to create superior promotions that will enhance your brand.

**BET NETWORKS**
- Create a piece that complements tuxedos at the BET awards.
- This blinging bag giveaway stole the spotlight.

**MOTOROLA**
- Provide a promotion that is undeniably cool.
- This promotion really said, "Hello Moto."

**ATI Jet**
- Create a cap that shows our brand is taking off.
- This flying logo made heads turn.

**HYPNOTIK**
- Promote a new hip night club.
- This award-winning wearable delivered hypnotic results.

ASI 31940    PPAI 111063    SAGE 50271    UPIC COMPRESS1



**DELL**
- Have a promotable promotion that's needed for our product launch.
- ... wearable that combined ... and our LogoWeld ...

**HELIUM**
- client: HELIUM
- purpose: Provide an eye catching wearable promotion.
- result: These "slinged-out" tees upifted their image.

**NINTENDO**
- client: NINTENDO
- purpose: Design a high end retail item for Wii players.
- result: Wii gamers were stylin' in these cozy jackets.

www.AddV.com

# WHAT ARE SHAPEMAGS *(a stickers too!)*

Give positive attraction to your brand with our custom magnets and stickers. Pick from any of our stock shapes or send your own artwork to have your brand printed on a high quality digital press or choose LogoWeld™ appliqué for a glimmering logo. Magnets and stickers can be used as a stand alone promotion or inserted with a Compress!t for an exceptional added value.





**UNIVERSITY OF ARIZONA**
- Promote school spirit.
- Stickers and tees that rallied school spirit.



**FENDER**
- Give us a twist on a classic promotion.
- This guitar sticker rocked the event.



**NINTENDO**
- Provide a kid-friendly video game promotion.
- Super Mario sticker and t-shirt were a super combo.



**SURF STORE**
- A retail item with added value.
- These cool stickers and tees were a hit with surfers.

ASI 31940    PPAI 111063    SAGE 50211    UPIC COMPRESIT

# WHAT IS A SHAPEPACK?

ShapePacks™ are a dynamic solution for a promotion on the go. Shirts are ready to wear, just open the box. ShapePack allows you to dramatically embellish your box with your own custom design. Choose from our stock boxes or present your own ideas. For that little something extra include coupons, free passes, or incentives.





**AQUARIUM SOFTWARE**

Design a badic show witness.

These shirts were worn right out of the box.



**THINKPAD**

An exclusive in-store offer.

A t-shirt with coupons and a cool laptop box.

**HAWAIIAN TROPIC**

Create a casual and wearable promotion item for a special event.

A fun t-shirt that was instantly wearable.

**GIBSON**

Unique wearable item for special event.

These tees rocked the house.



**MICROSOFT**

Provide a unique upscale packaging promotion.

The influential creative box received rave reviews.

**NASCAR**

Winning design for the fans.

An upscale ready-to-wear promotion that was kept ahead of the competition.

**HORIZON**

A promotional trade show item with appeal.

A t-shirt that is ready to wear.

# EcoWipes
### Handy Compact Cloths

Great promotions are green. Our EcoWipes are 100% natural, biodegradable, and packaged in a recyclable box. Wipes start at nickel size and grow before your eyes when exposed to water.

This ultimate handy cloth is earth friendly, economical and a remarkable value for your next promotion.

Great Uses:

Camping
Office
School bag
Restaurants

Traveling
Car
Baby care
Picnics

**HI GEAR**

We need a gift that scales new heights.

This got packed in with the essentials.

**STEP ONE**
Pour cold or warm water over EcoWipe.

**STEP TWO**
Let EcoWipe grow to full size (8.6 x 9.8 inch).

**STEP THREE**
EcoWipe is ready to use.

ASI 31949    PPAI 111663    SAGE 50211    UPIC COMPRESX

# BooShirt
### Bamboo Apparel

Give it up to Mother Nature for creating this eco-friendly fabric. Our bamboo polos and t-shirts are made from 70% bamboo fibers and 30% cotton. Our shirts are not only soft and silky but they also have many other desirable qualities.

• Naturally Anti-Bacterial
• Built in Ultraviolet protection
• Moisture wicking
• Antimicrobial
• Natural fibers

Globally, we believe in socially and environmentally responsible conduct and are actively pursuing new eco-friendly products and business solutions.



**ADDVENTURE**
Add Impact · Add Value

The Addventure Addvantage:

Thousands of Shapes
Innovative Products
Return on Investment
Marketing Tools

SHAPE YOUR BRAND™

ASI 31940 · PPAI 111053 · SAGE 50211 · UPIC COMPREST

© 2008 AddVenture Products, Inc. All rights reserved.

Logos herein are trademark of their respective companies and used for demonstration purposes only. Not for sale or reproduction.

www.Addv...com

# EXHIBIT 2



# index

**CompressT**
Shape your brand with a custom shaped t-shirt.
PAGE 04

**SpecialT Printing**
Take your artwork to the next level with specialty screen printing.
PAGE 14

**LogoWeld™**
Enhance your brand with this premium solution.
PAGE 16

**ShapeMags**
Attraction guaranteed with these custom shaped magnets and stickers.
PAGE 19

**ShapePack**
Pack your tees in our custom shaped boxes.
PAGE 20

**BooShirt**
Breathe a little easier with these silky smooth shirts.
PAGE 22

**EcoWipes**
Get handy with wipes that grow before your eyes.
PAGE 23

AS! 31990   PPAII 111053   SAGE 60211   UPIC COMPRESST



## ADDVENTURE™
### Add Impact    Add Value

AddVenture was founded in New York in 1981 as A. Davis Design. When we moved to Southern California in 1992 our name was changed to AddVenture Products, (hence the double D). AddVenture is an award-winning supplier of innovative shaped promotional products. Back in 1988, we introduced the first postcard compressed t-shirt to the world.

As the creator of the original CompressT, we hold numerous design and utility patents. AddVenture ships everything out of our corporate headquarters and manufacturing facility in Southern California.

The heartbeat of AddVenture's success is found in the extraordinary trust our distributor partners place in us. On-time delivery is the core of our culture and is as important to us as it is to our customers. We are committed to shaping the success of our partners by building brand value and by delivering reliable first class service for every customer every time.



# WHAT IS A COMPRESS T

Compress T is completely unique from start to finish. Starting with your choice of 100% cotton t-shirt, we screen print your graphic, and then compress your tee under tremendous pressure into the solid custom shape of your choice. Your artwork is displayed on a high quality insert card visible through the package, transforming each t-shirt into a custom marketing tool. The result is an unforgettable promotion that fits into the palm of your hand and adds shape to your brand.

## SAMPLE USES:

| | |
|---|---|
| · Product Launches | · Gift with Purchase |
| · Company Promotions | · Product Recognition |
| · Sales Promotion | · Creative Packaging |
| · Trade Show Give Aways | · Direct Mail |
| · Coupon Inserts | · In Store Promotions |

| |
|---|
| · Invitations |
| Meetings and Events |
| · Vending Machines |
| Point of Purchase Display |
| · On Pack Promotions |

## EASY AS 1·2·3



**STEP 1**
Your logo or design is screen printed onto a 100% cotton brand name t-shirt.

**STEP 2**
Our special process compresses and vacuums the t-shirt under tremendous pressure into small solid packages.

**STEP 3**
Open the package, then wash and dry and it will return to its regular shape with your message ready to wear.

DESIGN

A53 31840    PPA1 111653    SAGE 50211    UPC COMPRESST













## CUSTOM SHAPES

Differentiate your brand from the competition with a promotion that is undeniably unique. Send us your custom art to design a mold that differentiates you from the rest. Our state-of-the-art engineering process will make your promotion stand out.

FROM THE PLAN,
TO THE MOLD,
TO YOUR TARGET.

**HUMMER**
- Go where only the very few dare ventures.
- A big shape that drove the unique campaign message.

**MSNBC**
- Brand the MSNBC logo in a colorful and unique way.
- A custom Compress! that struck as proud as a peacock.

**ALL**
- Create a custom promotion for a fresh, new line.
- A clever item that cleaned up the competition.

ASI 31940   PPAI 111063   SAGE 59211   UPC COMPRESS!




COMPRESS T

# ADD ANOTHER DIMENSION

Design your Compress T to come to life in 3D packaging. Enhance your custom t-shirt by adding a second or third insert card. By transforming your artwork into a replica of your brand, this promotion becomes the real thing.

GET TOASTED WITH QUIZNOS



**QUIZNOS**
- Give us a t-shirt shape that looks just like our sandwich package.
- A promotion that looked good enough to eat.



**MENTOS**
- Give us a t-shirt giveaway that looks like the roll package.
- This promotion took our breath away.



**T-TAPE**
- Simulate our product for a promotion.
- A miniature replica of their product on a disk.

AS 31940    P04 111053    SAGE 00211    UPC COMPRESS T

# HOW TO USE A COMPRESS™

There are no limits when imagination adds value to your promotion. Add stickers, coupons, direct mailing, or product to increase the visibility of your brand. Convert your CompressT into a unique way to measure the success of your promotion or to directly drive purchasing.





**PARAMOUNT PICTURES**
- Promote the "Stardust" movie release.
- The enclosed stars added magic to this promotion.

**EQUIPMENT WEBSERVICES**
- Beef-up Sales with a unique promotion.
- This simulated snack package, packed on a Styrofoam tray, included a sticker to generate sales leads.

**VOKAB KOMPANY**
- Provide added value to our CD release.
- This unique promotion rocks!!

**MICROSOFT**
- Design a fun way to participate in a new product launch.
- A unique custom shape thrilled lucky barcode scan winners.

A53 31040    PRM 111053    SAGE 50211    UPIC COMPRESS



**client: MICROSOFT**
purpose: Prize for winning clients.
result: This was a very wide mailing promotion.



**client: GOLD'S GYM**

**client: LG**
purpose: Drive our free cell phone promotion/launch.
result: The lucky package was opened indicating winning good tickets inside.

# SPECIAL™ PRINTING

Let us transform your promotion into a garment with a retail rich flavor that subtly elevates your brand. Bring your creative ideas to the next level of screen printing with innovative techniques such as velveteen, sparkle, high density inks, vintage wash and more.






**BLING**
- Given for design focused promotions. Foil has a rich retail look that will provide a sophisticated touch to any logo or to enhance graphics.

**SPARKLE**
- Add shimmer and shine with an extra level of liquid crystals. Sparkle ink can be added to almost any color for a glamorous and glistening result.








**VINTAGE WASH**
- Used for a distinctly old school effect, Vintage Wash offers a soft hand feel on dark garments.

**METALLIC**
- Metallic inks add shimmer and shine to your design or logo. Reflective inks enhance the surface and texture of your wearable.

**VELVETEEN**
- Beautifully accent designs with a special soft flocked fiber. Textures like suede and felt give your appeal a uniquely delicate feel.

A9131940    PPM.111063    SAGE 50011    UPC COMPRINT3



**process: Index and Process Colors**

**result:** Your complex graphic images will convey a vibe with the use of vibrant colors and detailed shading. See what award-winning separations can do for your project.

**process: Jumbo Screen Printing**

**uses:** Got a huge graphic to print? Use our Jumbo Screen Printing capabilities to capture your attention when details are massive.

# WHAT IS LOGOWELD?

LogoWeld™ is a process of sonically welding layers of vinyl to fabric. This premium promotional solution fuses a 3-dimensional applique to high quality apparel and accessories. We design and cut custom dies from your artwork in-house. LogoWeld™ can be used alone or combined with silk screening to create superior promotions that will enhance your brand.



**BET NETWORKS**
- Create a piece that compliments tuxedos at the BET awards.
- This blinging bag giveaway stole the spotlight.



**ATT JET**
- Create a cap that shows our brand is taking off.
- This flying logo made heads turn.



**HYPNOTIK**
- Promote a new hip night club.
- This award winning wearable delivered hypnotic results.



**MOTOROLA**
- Provide a promotion that is undeniably cool.
- This promotion really said, "Hello Moto."

www.AdqV.com

**DELL**
client: DELL

**HELIUM**
client: HELIUM

**NINTENDO**
client: NINTENDO

# WHAT ARE SHAPEMAGICS & stickers too?

Give positive attraction to your brand with our custom magnets and stickers. Pick from any of our stock shapes or send your own artwork to have your brand printed on a high quality digital press or choose LogoWeld™ applique for a glimmering logo. Magnets and stickers can be used as a stand alone promotion or inserted with a Compress!T for an exceptional added value.





**UNIVERSITY OF ARIZONA**
- Promote school spirit.
- Stickers and tees that rallied school spirit.

**FENDER**
- Give us a twist on a classic promotion.
- This guitar sticker rocked the event.

**NINTENDO**
- Provide a kid-friendly video game promotion.
- Super Mario sticker and t-shirt were a sweet combo.

**SURF STORE**
- A retail item with added value.
- These cool stickers and tees were a hit with surfers.

# WHAT IS A SHAPEPACK ?

ShapePacks™ are a dynamic solution for a promotion on the go. Shirts are ready to wear, just open the box. ShapePack allows you to dramatically embellish your box with your own custom design. Choose from our stock boxes or present your own ideas. For that little something extra include coupons, free passes, or incentives.







**AQUARIUM SOFTWARE**
- Design: a trade show winner.
- These shirts were worn right out of the box.

**THINKPAD**
- An exclusive in-store offer.
- A t-shirt with coupons and a cool laptop box.

**HAWAIIAN TROPIC**
- Create a casual and wearable promotion item for a special event.
- A fun t-shirt that was instantly wearable.

**GIBSON**
- Unique wearable item for special event.
- These tees rocked the house.

**MICROSOFT**
- purpose: Provide a unique packaging promotion.
- result: This fun themed shaped box received rave reviews.

**HORIZON**
- purpose: A giveaway inside a box with item and results.
- result: A t-shirt that is ready to wear.

**NASCAR**
- purpose: Winning design for the fans.
- result: An specially ready-to-wear promotion that was tops ahead of the competition.



# ECOWIPES
### Handy Compact Cloths

Great promotions are green. Our EcoWipes are 100% natural, biodegradable, and packaged in a recyclable box. Wipes start at nickel size and grow before your eyes when exposed to water. This ultimate handy cloth is earth friendly, economical and a remarkable value for your next promotion.

Trade Show
Office
School bag
Restaurants

Camping
Traveling
Car
Baby care
Picnics

**HI GEAR** — We need a gift that speaks new heights.

This got packed in with the essentials.

**STEP ONE** — Pour cold or warm water over EcoWipe.

**STEP TWO** — Let EcoWipe grow to full size (6.6 x 9.8 inch).

**STEP THREE** — EcoWipe is ready to use.

ASI 21840   PPAI 111653   SAGE 50241   UPIC COMPRES1

# BOOSHIRT
### Bamboo Apparel



Give it up to Mother Nature for creating this eco-friendly fabric. Our bamboo polos and t-shirts are made from 70% bamboo fibers and 30% cotton. Our shirts are not only soft and silky but they also have many other desirable qualities.

- Naturally Anti-Bacterial
- Built in Ultraviolet protection
- Moisture wicking
- Antimicrobial
- Natural fibers

Globally, we believe in socially and environmentally responsible conduct and are actively pursuing new eco-friendly products and business solutions.



ADDVENTURE
Add Impact · Add Value

The Addventure Addvantage

Thousands of Shapes
Innovative Products
Return on Investment
Marketing Tools

SHAPE YOUR BRAND™

ASI 31940    PPAI 111053    SAGE 50211    UPIC COMPREST

© 2008 AddVenture Products, Inc. All rights reserved.

Logos herein are trademark of their respective companies and used for demonstration purposes only. Not for sale or reproduction.

www.AddV.com

# EXHIBIT 3

## AIPLA Reports

A Periodic Notification of AIPLA Activities and
Current Developments in Intellectual Property Law
Copyright © 2007 AIPLA

November 27, 2007

*Patents/Designs/Point of Novelty*
### En Banc CAFC Will Examine Design Patent 'Point of Novelty' Requirement
*Egyptian Goddess, Inc. v. Swisa, Inc.*, Fed. Cir., No. 2006-1562, en banc review granted 11/26/07.

The Federal Circuit on November 26, 2007, granted en banc review of a design patent case to examine the "point of novelty" requirement for proving infringement and other fundamental design patent issues.

Design patent infringement has required evidence that: (1) the accused and patented designs appear substantially similar to an ordinary observer; and (2) the accused design appropriates the novelty in the patented design which distinguishes it from the prior art.

On review is a panel ruling in which Judge Kimberly Moore pointed out that the patentee is not free to set forth any combination of elements as its point of novelty. She wrote the following: "For a combination of individually known design elements to constitute a point of novelty, the combination must be a non-trivial advance over the prior art." Judge Timothy Dyk dissented, arguing that the majority eviscerates the presumption of validity by conflating the criteria for infringement and obviousness. Judge Dyk also pointed out that the majority's theory finds no support in the case law and that it was argued by neither party to the litigation.

The en banc order sets out the following specific questions for the parties to brief:

(1) Should "point of novelty" be an infringement test for design patents?
(2) If so:
    (a) should a non-trivial advance over the prior art be included?
    (b) should the point of novelty be part of patentee's case or should it be a defense?
    (c) should the patentee be permitted to divide closely related features of the patented design to match the accused design?
    (d) may there be more than one point of novelty? and
    (e) should the overall appearance of a design be allowed as a point of novelty, as considered in *Lawman Armor Corp. v. Winner Int'l, LLC*, 449 F.3d 1190 (Fed. Cir. 2006)?
(3) Should claim construction apply to design patents? If so, what role should it have in the infringement analysis?

AIPLA filed an amicus brief urging en banc review in this case. AIPLA argued that the panel decision articulated a new rule that defeats the statutory presumption of validity by requiring proof of non-obviousness to show infringement even though the PTO had already been satisfied on that issue. According to the brief, the points of novelty test for proving infringement requires only a showing of "novelty."

To read the en banc order in this case, click here.
To read the panel decision in this case, click here.
To read the AIPLA amicus brief supporting the petition for en banc review, click here.

# United States Court of Appeals for the Federal Circuit

2006-1562

EGYPTIAN GODDESS, INC.,

Plaintiff-Appellant,

and

ADI TORKIYA,

Third Party Defendant,

v.

SWISA, INC. and DROR SWISA,

Defendants/Third Party Plaintiffs-Appellees.

Robert G. Oake, Jr., Oake Law Office, of Allen, Texas, argued for plaintiff-appellant.

Frederick Linton Medlin, Kirkpatrick & Lockhart Preston Gates Ellis LLP, of Dallas, Texas, argued for defendants/third party plaintiffs-appellees.  With him on the brief was Linda G. Moore.  Of counsel was Jeffrey L. Snow, of Boston, Massachusetts.

Appealed from:  United States District Court for the Northern District of Texas

Judge David C. Godbey

# United States Court of Appeals for the Federal Circuit

2006-1562

EGYPTIAN GODDESS, INC.,

Plaintiff-Appellant,

and

ADI TORKIYA,

Third Party Defendant,

v.

SWISA, INC. and DROR SWISA,

Defendants/Third Party Plaintiffs-Appellees.

_____

DECIDED: August 29, 2007

_____

Before DYK, <u>Circuit Judge</u>, ARCHER, <u>Senior Circuit Judge</u>, and MOORE, <u>Circuit Judge</u>.

Opinion for the court filed by <u>Circuit Judge</u> MOORE. Dissenting opinion filed by <u>Circuit Judge</u> DYK.

MOORE, <u>Circuit Judge</u>.

Appellant Egyptian Goddess, Inc. (EGI) appeals from the final judgment of the United States District Court for the Northern District of Texas, granting summary judgment of noninfringement of U.S. Design Patent No. 467,389 (the D'389 patent) in

favor of appellees Swisa, Inc. and Dror Swisa (Swisa).  Egyptian Goddess, Inc. v.
Swisa, Inc., No. 3:03-CV-0594-N (N.D. Tex. Dec. 14, 2005) (Summary Judgment
Order).  Because the district court properly determined that there is no genuine issue of
material fact as to whether the alleged infringing product appropriates the point of
novelty of the claimed design, we affirm.

BACKGROUND

The D'389 patent covers "an ornamental nail buffer" design as illustrated in the
patent's seven figures, one of which is reproduced below.



On March 21, 2003, EGI sued Swisa, claiming that the D'389 patent was infringed by
certain Swisa nail buffers.  Swisa filed a counterclaim seeking declaratory judgment on
various theories, including noninfringement of the D'389 patent.  On March 3, 2005, the
district court issued a claim construction order, construing the D'389 patent as claiming:

> A hollow tubular frame of generally square cross section, where the
> square has sides of length S, the frame has a length of approximately 3S,
> and the frame has a thickness of approximately T = 0.1S; the corners of
> the cross section are rounded, with the outer corner of the cross section
> rounded on a 90 degree radius of approximately 1.25T, and the inner
> corner of the cross section rounded on a 90 degree radius of
> approximately 0.25T; and with rectangular abrasive pads of thickness T
> affixed to three of the sides of the frame, covering the flat portion of the
> sides while leaving the curved radius uncovered, with the fourth side of the
> frame bare.

Neither party challenges the district court's claim construction.

2006-1562                              2

Swisa moved for summary judgment of invalidity and noninfringement—on the grounds that the accused designs did not infringe the D'389 patent under either the point of novelty or the ordinary observer test. The district court granted summary judgment on the ground that the Swisa nail buffers did not contain the point of novelty of the patented design. Summary Judgment Order, at 3-4. Specifically, the court stated that "[t]he only point of novelty in the D'389 Patent over the Nailco Patent is the addition of the fourth side without a pad," which the Swisa nail buffers did not have. Id. The district court entered a final judgment, dismissing EGI's claims of infringement with prejudice and dismissing Swisa's counterclaims without prejudice. This appeal followed.

We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1). We review the district court's grant of summary judgment de novo. Winner Int'l Corp. v. Wolo Mfg. Corp., 905 F.2d 375, 376 (Fed. Cir. 1990). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Id.

## DISCUSSION

### I

There are two distinct requirements for establishing design patent infringement. Bernhardt, L.L.C. v. Collezione Europa USA, Inc., 386 F.3d 1371, 1383 (Fed. Cir. 2004). The first, called the ordinary observer test, requires that "in the eye of an ordinary observer, giving such attention as a purchaser usually gives, [the] two designs are substantially the same . . . the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other." Gorham Co. v. White, 81

U.S. (14 Wall.) 511, 528 (1871). The second, called the point of novelty test, requires that "no matter how similar two items look, 'the accused device must appropriate the novelty in the patented device which distinguishes it from the prior art.'" Litton Sys., Inc. v. Whirlpool Corp., 728 F.2d 1423, 1444 (Fed. Cir. 1984) (citing Sears, Roebuck & Co. v. Talge, 140 F.2d 395, 396 (8th Cir. 1944)). "Both the ordinary observer and point of novelty tests are factual inquiries that are undertaken by the fact finder during the infringement stage of proceedings, after the claim has been construed by the court." Bernhardt, 386 F.3d at 1383.

Because the point of novelty determination is part of the infringement analysis, the initial burden is on the patentee to "present, in some form, its contentions as to points of novelty." Id. at 1383. The point of novelty can be either a single novel design element or a combination of elements that are individually known in the prior art. See Lawman Armor Corp. v. Winner Int'l, LLC, 449 F.3d 1190, 1192 (Fed. Cir. 2006) (supplemental opinion on petition for rehearing); Litton, 728 F.2d at 1443-44. The patentee is not free to set forth any combination of elements as the point of novelty, rather, the point of novelty must include features of the claimed design that distinguish it from the prior art.[1] Litton, 728 F.2d at 1444; Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., 162 F.3d 1113, 1118 (Fed. Cir. 1998).

---

[1] Swisa asks this court to forbid the "shopping list approach" to selecting a point of novelty, whereby a patentee strategically selects a point of novelty that consists only of those elements of the claimed design that are also present in the accused design. See Hosley Int'l Trading Corp. v. K Mart Corp., 237 F. Supp. 2d 907, 911-13 (N.D. Ill. 2002); Bush Indus., Inc. v. O'Sullivan Indus., Inc., 772 F. Supp. 1442, 1452 (D. Del. 1991). We agree with Swisa that the point of novelty should be determined by comparing the claimed design to the prior art and not to the accused design. As an appellate court, however, we review the merits of the asserted point of novelty and not the motive behind its selection.

For a combination of individually known design elements to constitute a point of novelty, the combination must be a non-trivial advance over the prior art. [2] See Smith v. Whitman Saddle Co., 148 U.S. 674, 682 (1893) (analyzing whether the accused device contained the aspects of the claimed design that "rendered it patentable as a complete and integral whole"); Bernhardt, 386 F.3d at 1384 (noting that the point of novelty determination "is not especially different from the factual determinations that the district courts routinely undertake" in performing the obviousness inquiry); cf. Litton, 728 F.2d at 1444 (applying the results of the obviousness analysis when determining the point of novelty of the claimed design); Goodyear, 162 F.3d at 1119, 1121 (noting that the court "adopted the same points of novelty that it had relied on in determining that the '080 patent was not invalid for obviousness," and holding that "the district court did not clearly err in giving weight to those aspects of the '080 tread that were necessary design aspects in sustaining the validity of the patent").[3]

---

[2]    Contrary to assertions in the dissenting opinion, neither our precedent that utilized the results of an obviousness inquiry in determining the point of novelty nor our holding today is inconsistent with our Lawman decision. Lawman does not reject a non-trivial test for the point of novelty inquiry, but rather rejects the notion that the suggestion or motivation to combine prior art references must be proven as part of the infringement analysis. Lawman Armor Corp. v. Winner Int'l, LLC, 437 F.3d 1383, 1385 (Fed. Cir. 2006). Rejecting application of the motivation to combine test is not tantamount to rejecting application of an obviousness type analysis. See KSR Int'l Co. v. Teleflex Inc., 127 S.Ct. 1727, 1741-42 (2007).

[3]    The dissent suggests that determining the point of novelty by a non-triviality test conflates infringement and validity analyses. Dissenting Op., at 2. Design patent law has already intertwined the infringement and validity tests. The infringement test at issue in this case is called the "point of novelty" test. The question is not whether the infringement and validity analyses are similar or conflated, they already are. The question is: When the patentee claims a combination of old prior art elements as its asserted point of novelty should the test be one of anticipation or obviousness? We conclude that non-triviality ought to apply—if the standard is akin to anticipation then a combination with even the most trivial difference would meet the standard.

II

The district court properly determined that no reasonable jury could conclude that the point of novelty proffered by EGI is a non-trivial advance over the prior art. The parties do not dispute that the various design elements of the claimed design were each individually disclosed in the prior art. EGI's asserted point of novelty is a combination of four of the claimed design's elements: (1) an open and hollow body, (2) square cross-section, (3) raised rectangular pads, and (4) exposed corners. The district court properly found that one prior art nail buffer design, illustrated in U.S. Design Patent No. 416,648 (the Nailco patent), shown below, contains each of these elements except that the body is triangular—rather than square—in cross-section. <u>Summary Judgment Order</u>, at 4.



FIG. 1

There is no dispute, however, that nail buffers having square cross-sections were widely known in the prior art. EGI admits that three prior art references cited during prosecution of the D'389 patent illustrate at least five nail buffer designs with a square cross-section. Moreover, the parties both agree that other well-known prior art designs, namely the Tammy Taylor buffers, also had square cross-sections. In light of the prior art, no reasonable juror could conclude that EGI's asserted point of novelty constituted a non-trivial advance over the prior art. Thus, the district court did not err in rejecting EGI's asserted point of novelty as a matter of law.

The district court correctly determined that only if the point of novelty included a fourth side without a raised pad could it even arguably be a non-trivial advance over the prior art. The Swisa buffers have raised, abrasive pads on <u>all four</u> sides. When considering the prior art in the nail buffer field, this difference between the accused design and the patented design cannot be considered minor. <u>See</u> <u>Litton</u>, 728 F.2d at 1444 (explaining that the differences between the claimed and accused designs must be considered in light of the differences between the prior art and the claimed design). Since the parties agree that the Swisa buffers do not contain a fourth side without a raised pad, summary judgment of noninfringement was properly granted. For this reason, the decision below is

<u>AFFIRMED.</u>

COSTS

Each party shall bear its own costs.

# United States Court of Appeals for the Federal Circuit

2006-1562

EGYPTIAN GODDESS, INC.,

Plaintiff-Appellant,

and

ADI TORKIYA,

Third Party Defendant,

v.

SWISA, INC. and DROR SWISA,

Defendants/Third Party Plaintiffs-Appellees.

DYK, <u>Circuit Judge</u>, dissenting.

This case concerns the scope of the point of novelty requirement in design patents. The majority decides this case on a ground that was not addressed in briefs or at oral argument by either party. In my view, the majority opinion departs from our precedent in fashioning a new rule—that a combination of elements cannot constitute a point of novelty in design patent cases unless the combination constitutes a "non-trivial advance" over the prior art. The majority equates its newly-fashioned non-trivial advance test with the requirement that a design patent be nonobvious over the prior art.[1] It then appears to limit the application of that test to cases in which the point of novelty involves a combination of prior art elements.

---

[1] The majority's approach is in fact more restrictive than a nonobviousness test since it takes no account of secondary considerations.

It seems to me that there are multiple flaws in the majority's approach. First, by conflating the criteria for infringement and obviousness, the test eviscerates the statutory presumption of validity by requiring the patentee to affirmatively prove nonobviousness. See 35 U.S.C. § 282 ("The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity."). The burden of proof on obviousness rests with the accused infringer and must be established by clear and convincing evidence. Under the majority's test, however, the patentee would have to prove nonobviousness in order to establish infringement.

Second, the majority's approach is at the same time too narrow and too broad. It is too narrow because it applies a special test only to designs which involve a combination of design elements. It is clear to me that a single point of novelty test must apply to all points of novelty, not just those involving combinations. That has invariably been the approach of our past cases. The majority's approach is also too broad because it extends an obviousness-like test to each point of novelty, not merely the overall design (which is presently the sole focus of the obviousness analysis).

Third, determining whether each combination point of novelty represents a "non-trivial advance" over the prior art requires a difficult and restrictive inquiry in design patent cases. As we have previously noted, "[d]esign patents have almost no scope." In re Mann, 861 F.2d 1581, 1582 (Fed. Cir. 1988). Points of novelty in design patents are often not dramatically different from the prior art. It is difficult enough to assess whether an overall design would have been obvious; it is almost impossible to determine whether a particular design feature represents a trivial or substantial advance over the prior art. The majority appears willing to have this issue resolved on summary

2006-1562                                2

judgment without factfinding by a jury, thus relegating to the court the determination whether there is a non-trivial advance over the prior art, a determination which a court is ill suited to make and which it did not in fact make in this case.

Fourth, the majority's test is devoid of support in the case law. The most that any of the cases cited by the majority can establish is that we have, in certain instances, used the results of our obviousness analysis to determine the point of novelty under the point of novelty test. But no case has come close to requiring a showing of nonobviousness as part of the point of novelty test.[2] In Bernhardt, L.L.C. v. Collezione Europa USA, Inc., 386 F.3d 1371 (Fed. Cir. 2004), we considered only the question whether expert testimony was required for a party to establish infringement under the point of novelty test. In holding that such testimony was not required, the court merely observed that "[a] determination of the differences between the patented design and the prior art is not especially different from the factual determinations that district courts routinely undertake on other issues, such as obviousness." Id. (emphasis added). This statement in no way suggests—as the majority appears to believe, see Maj. Op. at 5— that the substantive inquiries on obviousness and infringement should be merged. Our decisions in Litton and Goodyear do not support the majority's test either. Litton Sys., Inc. v. Whirlpool Corp., 728 F.2d 1423 (Fed. Cir. 1984), was a case in which, having determined that the differences between the patented design and the prior art rendered the overall design nonobvious, see Graham v. John Deere Co., 383 U.S. 1, 17 (1966), we then considered those differences to be the points of novelty. Litton, 728 F.2d at 1442, 1444. In Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., 162 F.3d

---

[2] Smith v. Whitman Saddle Co., 148 U.S. 674 (1893), long predated the statutory obviousness requirement.

1113 (Fed. Cir. 1998), we held that the use of a similar approach by the district court was not clearly erroneous. <u>Id.</u> at 1119, 1121. It is one thing to suggest that a feature that renders a design nonobvious is also a point of novelty. It is quite another to hold that a point of novelty cannot exist unless it would also render the design nonobvious. Again, neither case establishes that there must be a showing of a non-trivial advance to find an asserted combination point of novelty.

Finally, the majority's test is in fact contrary to several of our cases. In <u>Lawman Armor Corp. v. Winner International, LLC</u>, 437 F.3d 1383 (Fed. Cir. 2006), we rejected applying an obviousness analysis to the determination of infringement. <u>Id.</u> at 1385. We stated explicitly that "[w]hether there is any suggestion to combine prior art references may be relevant in a validity inquiry to determine obviousness . . . but has no place in the infringement issue in this case." <u>Id.</u> Other cases have treated the questions of novelty and obviousness in design cases as separate inquiries. Thus in <u>In re Leslie</u>, 547 F.2d 116 (CCPA 1977), our predecessor court distinguished situations "where the novelty of the design is at issue" from situations "where, as here, the issue is one of obviousness." <u>Id.</u> at 120; <u>see also</u> <u>In re Blum</u>, 374 F.2d 904, 908 (CCPA 1967) (although design had "an appearance which is novel in the strictest sense of the word, the rejection here is not for want of novelty but for obviousness").

I would address this case without reliance on the majority's incorrect "non-trivial advance" standard. I respectfully dissent.